**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-MDL-1570 (GBD) (SN)<br><br>ECF Case |
| This document relates to:<br>*Betso et al v. Islamic Republic of Iran* | Case No. 21-cv-01394 (GBD) (SN)<br><br>ECF Case |

## *BETSO* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENTS BY DEFAULT

Plaintiffs in the above-captioned matter ("*Betso* Plaintiffs"), by their attorneys, Sullivan Papain Block McManus Coffinas & Cannavo P.C., respectfully submit the within Memorandum of Law in support of their Motion for an Order of Partial Final Judgment by Default on liability against defendant, Islamic Republic of Iran ("Iran") and in favor of the *Betso* Plaintiffs pursuant to 28 U.S.C. 1605A(c), and to award damages to the *Betso* Plaintiffs in the amounts set forth in the simultaneously filed "[Proposed] Order of Partial Final Default Judgments on Behalf of the *Betso* Plaintiffs Identified in Exhibits B and C" ("Proposed Order of Judgment"). [1]

## I.    INTRODUCTION

This action arises out of the events of September 11, 2001, during which nineteen (19) members of the al Qaeda terrorist network hijacked four (4) commercial airliners and used those planes as weapons in coordinated terrorist attacks on the United States ("9/11 Terrorist Attacks").

The *Betso* Plaintiffs consist of: (i) personal representatives of the estates of individuals who developed severe and ultimately fatal medical conditions ("Latent Injury Decedent[s]" or

---

[1] The exhibits attached to the accompanying Declaration of Nicholas Papain, Esq. ("Papain Declaration"), as Exhibits ("Ex.") A and B are attached as Ex. B and C to the Proposed Order of Judgment. Unless otherwise stated, all references hereinafter to exhibits are to the exhibits attached to the Papain Declaration.

"Decedent[s]") as a direct result of the 9/11 Terrorist Attacks ("9/11-Related Injury"); and (ii) eligible surviving family members ("Surviving Family Members") of Latent Injury Decedents.

The *Betso* Plaintiffs request entry of judgment by default on liability against Iran under the terrorism exception, 28 U.S.C. § 1605A of the FSIA, 28 U.S.C. § 1602 *et seq.*, and further request: (1) compensatory damages for the severe pain and suffering sustained by the Latent Injury Decedents listed in Ex. A, in the amounts of $7,000,000 per estate as to each estate listed therein; (2) solatium damages for the emotional injuries suffered by the Surviving Family Members listed in Ex. B, in the amounts set forth therein; (3) prejudgment interest on those damages as set forth below; and (4) permission to submit future applications for economic damages, punitive damages, or other damages consistent with any future rulings of this Court.[2]

As discussed below, the September 11th Victim Compensation Fund ("VCF") determined that each Latent Injury Decedent listed in Ex. A and B suffered and died from a 9/11-Related Injury. Evidence of such is included in Ex. D through DD of the Papain Declaration, which also contain affidavits from *Betso* Plaintiffs ("*Betso* Plaintiff Affidavits"), attesting to the cause of death of, and the profound pain and suffering endured by the Latent Injury Decedents, and the solatium damages suffered by the Surviving Family Members.

As to the solatium claims, attached to the Papain Declaration as Exhibit EE is proof that the VCF awards solatium-type damages to spouses and dependents of decedents, including latent injury decedents.

## II.   **PROCEDURAL BACKGROUND**

On February 17, 2021, pursuant to the Oct. 28, 2019 Court Order, ECF No. 5234,[3] counsel for the *Betso* Plaintiffs filed a Short Form Complaint against Iran, *Betso et al v. Islamic Republic*

---

[2] The Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) ("JASTA"), provides an additional ground for jurisdiction and liability against Iran. However, because claims under such statute would potentially raise issues not previously addressed by the Court, the *Betso* Plaintiffs are not seeking judgment in reliance on JASTA at this time but reserve their right to do so in the future.

[3] Unless otherwise noted, all ECF numbers refer to the main MDL docket in *In re Terrorist Attacks on September*

*of Iran*, No. 21-cv-01394 (GBD) (SN), ECF No. 1, adopting all the factual and jurisdictional allegations in the Amended Consolidated Complaint against Iran in *Ashton et al. v. al Qaeda Islamic Army, et al.*, No. 02-cv-06977 (GBD) (SN), and joining in all prior pleadings in *Ashton*. As provided for in the Oct. 28, 2019 Order, ECF No. 5234, by filing the Short Form Complaint, the *Betso* Plaintiffs are bound by all decisions in *Ashton* and in this MDL that relate to all actions. *See* Order, ECF No. 4045, *superseded by* the Oct. 28, 2019 Order, ECF No. 5234.

On September 29, 2021, the *Betso* Plaintiffs filed a Notice of Amendment pursuant to the Oct. 28, 2019 Order, ECF No. 5234, to add new Plaintiffs. *See* Iran Notice of Amendment, Sept. 28, 2021, ECF 7154.

As detailed below, service was effected on Sept. 6, 2022, under 28 U.S.C. § 1608(a)(4). *See Betso*, No. 21-cv-01394, ECF No 46 (Aff. of Service). To date, Iran has not filed a responsive pleading or otherwise appeared in this suit. Thus, on February 6, 2023, the Clerk of the Court entered a Clerk's Certificate of Default against Iran. *See Betso*, No. 21-cv-01394, ECF No. 49.

## III.    JURISDICTION

### A.    The Court Has Subject Matter Jurisdiction

FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Samantar v. Yousef*, 560 U.S. 305, 314 (2010) (citing *Argentine Republic v. Amerada Hess Shipping Corp., 428, 434 (1989))*. A foreign state is presumed immune from suit in the courts of the United States unless one of FSIA's enumerated exceptions to immunity applies. *See* 28 U.S.C. §§ 1605-1605A; *Samanatar,* 130 S. Ct. at 2277-78. This Court has previously held that subject matter jurisdiction exists for claims against Iran in this multidistrict litigation ("MDL"), for personal injuries and deaths resulting from the 9/11 Terrorist Attacks, under two separate

---

*11,* 2001, No. 03-md-01570.

provisions of the FSIA: the State Sponsor of Terrorism exception (28 U.S.C. § 1605A(a)) and the

noncommercial tort exception (28 U.S.C. § 1605(a)(5)). *In re Terrorist Attacks on Sept. 11, 2001*,

No. 03-md-01570 (GBD),  2011 WL 13244047, at *36 (S.D.N.Y. Dec. 22, 2011) *("Havlish I")*.

 In their motion for judgment by default against Iran (and other defendants), the plaintiffs

in *Havlish I* submitted evidence to the Court, in the form of affidavits, videotaped testimony and

documentary evidence, which was the subject of a hearing held on December 15, 2011, *Id.* at *2.

 Based on the evidence before it, the Court entered certain Findings of Fact and Conclusions

of Law. *Id*. at *42. Among the Findings of Fact entered were the following:

> "4.  The U.S. State Department has designated Iran as a foreign state
> sponsor of terror every year since 1984… *Estate of Heiser v. Islamic
> Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006)." *Id.* at *3.
> …
> "133. Iran's facilitation of the hijackers' 'terrorist travel'
> operation…constituted direct support and material support for al
> Qaeda's 9/11 attacks…" *Id.* at *17.

 Among the Conclusions of Law entered were that the Court had subject matter jurisdiction

"because …defendants' conduct falls within both the 'state sponsor of terrorism exception set forth

in 28 U.S.C. § 1605A and the 'noncommercial tort' exception of § 1605(a)(5)" *Id.* at *36. Further,

the Court held that, plaintiffs had met their burden as to Iran's liability "by evidence satisfactory

to the Court. § 1608(e)" *Id.* at *39; concluding, in pertinent part, that:

> "16…the 9/11 attacks and the resulting deaths constitute
> 'extrajudicial killings'" *Id.*
> …
> "19…[P]laintiffs have established that Iran provided direct
> support to al Qaeda specifically for the [9/11 Terrorist Attacks]."
> *Id.* at *40.
> …
> "31…[P]laintiffs have established that the 9/11 attacks were caused
> by [Iran's]  provision of material support to al Qaeda." *Id.* at *41

Based upon the record before it, the Court in *Havlish I* granted plaintiffs' motion for judgment by default against Iran and final judgment of liability in favor of plaintiffs and against Iran. Order of Judgment, Dec. 22, 2011, ECF No. 2516 (*Havlish*).

The Court has extended the ruling in *Havlish I* to apply to multiple actions against Iran in this MDL. *See, e.g.,* Order of Judgment, Aug. 31, 2015, ECF No. 3020 (*Federal Ins.*); Order of Judgment, Aug. 31, 2015, ECF No. 3021 (*Ashton*); Order of Judgment, Aug. 31, 2015, ECF No. 3022 (*O'Neill*); Order of Judgment, Aug. 31, 2015, ECF No. 3023 (*Hoglan*); *Burnett et al. v. The Islamic Republic of Iran, et al.,* No. 15-cv-09903 (GBD) (SN), ECF No. 85 (Order of Judgment).

Moreover, the Court, by Mem. Decision and Order at 3, Aug. 9, 2023, ECF No. 9274, held that the "Court has subject matter jurisdiction…according to the Foreign Sovereign Immunities Act…" over claims against Iran in seven (7) cases, in this MDL, involving, as here, latent injury decedents and their immediate surviving family members.[4]

The issue of subject-matter jurisdiction over Iran need not and should not be re-litigated in the context of the within motion. *Fed. Ins. Co. v. Kingdom of Saudi Arabia*, 741 F.3d 353, 358 (2d Cir. 2013) ("September 11 cases were centralized in part to 'prevent inconsistent pretrial rulings'" (citations omitted)); *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010) (A court's "ability to take notice of adjudicative facts extends to judicial notice of court records in related proceedings." (Citing 29 Am. Jur. 2d Evidence § 151 (2010)); *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) ("[W]hen a court has ruled on an issue, that decision should

---

[4] The 7 cases are: *Mandelkow et al. v. Islamic Republic of Iran,* 1:20-cv-00315; *Alcabes et al. v. Islamic Republic of Iran,* 1:20-cv-00340; *Anderson et al. v. Islamic Republic of Iran,* 1:20-cv-00354; *Ahearn et al. v. Islamic Republic of Iran,* 1:20-cv-00355; *Asciutto et al. v. Islamic Republic of Iran,* 1:20-cv-00411; *Amin et al. v. Islamic Republic of Iran,* 1:20-cv-00412; *Basci et al. v. Islamic Republic of Iran,* 1:20-cv-00415. (Said 7 cases are hereinafter referred to collectively as "*Ahearn*".)

As discussed below, the Court in *Ahearn* found Iran was liable to the estates of the latent injury decedents but that it was not liable to their immediate family members for solatium damages.

generally be adhered to by that court in subsequent stages in the same case" (internal quotations omitted)).

As in *Havlish I* and *Ahearn*, the *Betso* Plaintiffs assert claims against Iran for wrongful deaths and personal injuries caused by the 9/11 Terrorist Attacks, based on Iran's material and direct support for critical aspects of the 9/11 Terrorist Attacks. The evidence that this Court considered in issuing judgments against Iran in *Havlish I* and in other cases in this MDL equally support the Court's subject matter jurisdiction over the *Betso* Plaintiffs' claims.

It is therefore respectfully submitted that this Court's prior rulings, finding subject matter jurisdiction under the FSIA's Terrorism Exception, 28 U.S.C. §1605A, over claims against Iran for wrongful deaths and personal injuries resulting from the 9/11 Terrorist Attacks, apply with equal force to the *Betso* Plaintiffs' claims herein.

### B.   The Court has Personal Jurisdiction over Iran.

"Under the FSIA…personal jurisdiction equals subject matter jurisdiction plus valid service of process." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991) (citation omitted); *see also* 28 U.S.C. § 1330(b) ("[P]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction . . . where service has been made under section 1608 of this title.").[5] Service under the FSIA is governed by 28 U.S.C. § 1608(a). As outlined below, the *Betso* Plaintiffs have satisfied the service requirements of this section, thereby giving this Court personal jurisdiction over Iran.

FSIA § 1608(a) "prescribes a hierarchy of four alternative procedures to use when serving process on a foreign state." *Finamar Inv'rs v. Republic of Tadjikistan*, 889 F. Supp. 114, 116

---

[5] As the Second Circuit has held that foreign states are not persons within the meaning of the Due Process Clause, there is no need to analyze whether asserting personal jurisdiction over Iran complies with due process. *Frontera Resources Azerbaijan Corp. v. State Oil Company of the Azerbaijan Republic*, 582 F.3d 393, 399-401 (2d Cir. 2009).

(S.D.N.Y. 1995). As the *Betso* Plaintiffs have no "special arrangement" with Iran, service via the first method, provided for in § 1608(a)(1), was unavailable. *See Betso*, No. 21-cv-01394, ECF No. 46 (Aff. of Serv., ¶ 1). Similarly, as there is no "applicable international convention," service via the second method, provided for in § 1608(a)(2) was unavailable. *Id.*

Thus, the *Betso* Plaintiffs attempted service via the third method, provided for in section 1608(a)(3), which allows service "by any form of mail requiring a signed receipt . . . address and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state."

On January 6, 2022, following a request from the *Betso* Plaintiffs, the Clerk certified mailing of the *Betso* Plaintiffs' Notice of Suit (English & Farsi), the Foreign Sovereign Immunities Act (English & Farsi), Civil Cover Sheet (English & Farsi), Summons (English & Farsi), Complaint (English & Farsi), Related Case Statement (English & Farsi), Entry of Appearance (English & Farsi), and Affidavit of Translator (collectively the "Service Documents") by registered mail, return receipt requested. *Betso*, No. 21-cv-01394, ECF No. 29 (Clerk Certificate of Mailing). Iran refused receipt of the mailing, and the Service Documents were returned to counsel's office. *Betso*, No. 21-cv-01394, Feb. 6, 2023, ECF No. 46 (Aff. of Serv., ¶ 3).

Following the inability to effect service under § 1608(a)(3), the *Betso* Plaintiffs arranged for service to be effected pursuant to § 1608(a)(4), which provides for service by diplomatic channels. 28 U.S.C. § 1608(a)(4) ("[I]f service cannot be made within 30 days under paragraph (3), . . . [service shall be made] by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels.").

On February 15, 2022, in response to the *Betso* Plaintiffs' request, the Clerk of the Court certified mailing of two copies of the Service Documents, along with the requisite fees, to the United States Department of State for service on Iran under 28 U.S.C. § 1608 (a)(4). *Betso*, No. 21-cv-01394, ECF No. 30 (Clerk Certificate of Mailing).

As evidenced by the letter dated October 11, 2022, from Jared Hess, Attorney Advisor, Overseas Citizens Services, Office of Legal Affairs, United States Department of State, to Ruby J. Krajick, Clerk of Court, service was effected on Iran on September 6, 2022, when the U.S. Department of State, assisted by the Foreign Interests Section of the Embassy of Switzerland in Tehran, delivered the Service Documents to Iran under cover of diplomatic note number 1092-IE. *See Betso,* No. 21-cv-01394, ECF No. 46, ¶ 6) and ECF No. 46-4 (Aff. of Serv., Ex. D).

On January 25, 2023, the Clerk of the Court acknowledged receipt of the October 11, 2022, letter from the United States Department of State.

Given the unavailability of any of the other methods of service, this service under 28 U.S.C. § 1608(a)(4) satisfies the requirements of § 1608. As service on Iran was proper and valid, and as the terrorism exception, 28 U.S.C. § 1605A, provides subject matter jurisdiction for the *Betso* Plaintiffs' claims against Iran, this Court has personal jurisdiction over Iran. *See, e.g.*, *Shapiro,* 930 F.2d at 1020, *Reed v. Islamic Republic of Iran,* 845 F. Supp. 2d 204, 209 (D.D.C. 2012).

## IV.   __IRAN IS IN DEFAULT__

Pursuant FSIA § 1608(d), Iran was obligated to "serve an answer or other responsive pleading to [the *Betso* Plaintiffs'] complaint within sixty days after service" was made. Pursuant to section 1608(c)(1), service under § 1608(a)(4) is deemed to have been made "as of the date of transmittal indicated in the certified copy of the diplomatic note." The date of transmittal of the diplomatic note is September 6, 2022. *See Betso*, No. 21-cv-01394, ECF No. 46-4 (Aff. of Serv.,

Ex. D) and ECF No. 47 (Aff. of Vito A. Cannavo, ¶ 13). Accordingly, Iran's answer or other responsive pleading was due by November 5, 2022. To date, Iran has not filed any responsive pleading or otherwise appeared in or defended this suit. Thus, Iran is in default.

Based on the foregoing, on February 6, 2023, the Clerk of the Court entered a certificate of default against Iran. *See Betso,* No. 21-cv-01394, ECF No. 49 (Clerk's Certificate of Default).

## V.    IRAN HAS BEEN FOUND LIABLE FOR THE 9/11 TERRORIST ATTACKS

As described above, based upon the evidence presented to the Court in *Havlish I*, the Court has granted motions for default judgments on liability against Iran in multiple cases in this MDL.

The FSIA provides that "[n]o judgment by default shall be entered by a court of the United States or of a State against a foreign state . . .unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Courts in this District have held this to mean "'a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff.'" *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 224 (S.D.N.Y. May 7, 2003) (quoting *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.D.C. 2002)); *see also Bd. of Mgrs. of Otic Prof'l Condo. v. Democratic Republic of Somalia*, 2009 U.S. Dist. LEXIS 68333, at *3 (S.D.N.Y. July 20, 2009).

A court may "'accept as true the plaintiffs' uncontroverted evidence.'" *Havlish I* at *2 (quoting *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000) and *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 268 (D.D.C. 2003)). No evidentiary hearing is required, and "plaintiffs may establish proof by affidavit." *Id.* (citing *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002)); *see also Commercial Bank of Kuwait v. Rafidain Bank*, 15 F. 3d 238, 242 (2d Cir. 1994) (evidence in the form of affidavits and exhibits sufficient to satisfy § 1608(e)).

Furthermore, courts in FSIA litigation are permitted "in subsequent related cases to rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced." *Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 75 (D.D.C. 2010) (internal quotation marks omitted); *see also, e.g.*, *Harrison v. Republic of Sudan,* 882 F. Supp. 2d 23, 31 (D.D.C. 2012) ("[W]hen a court has found facts relevant to a FSIA case involving material support to terrorist groups, courts in subsequent, related cases may 'rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced.'" (quoting *Taylor v. Islamic Republic of Iran,* 811 F. Supp. 2d 1, 7 (D.D.C. 2011))); *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 54 (D.D.C. 2009) ("[T]he FSIA does not require this Court to relitigate issues that have already been settled. Thus, this Court 'may take judicial notice of related proceedings and records in cases before the same court.'" (quoting *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 263 (D.D.C. 2006))).

The *Betso* Plaintiffs incorporate by reference herein all the evidence previously received and accepted by this Court, which also forms a part of the record in this MDL proceeding.

Such evidence and the record before this Court provide more than a sufficient evidentiary basis to establish Iran's liability to the *Betso* Plaintiffs for the 9/11 Terrorist Attacks, without the necessity of reproducing the same evidence.

## VI.   <u>COMPENSATORY DAMAGES AVAILABLE UNDER § 1605A</u>

Under 28 U.S.C. §§ 1605A(a)(1) and (c), damages are available "for personal injury or death." Such damages include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c)(4). An estate of a victim who died as a result of a terrorist attack can recover for the pain and suffering the decedent endured "during the period between injury and death," *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000); *Beer v. Islamic*

*Republic of Iran*, No. 08-cv-1807-RC, 2010 WL 5105174, at * 13 (D.D.C. Dec. 9, 2010), as well as "economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages," *Valore v. Islamic Rep. of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010).

## VII.   THE REQUIREMENTS UNDER § 1605A

Section 1605A(c) establishes a private right of action for claims: (1) brought by a U.S. citizen or their representative (2) against a country designated as a state sponsor of terrorism (3) that provided material support or resources for (4) an act of torture, extrajudicial killing, aircraft sabotage or hostage taking that (5) caused (6) personal injury or death. 28 U.S.C. §§ 1605A(a), (c).

First, as verified in the Papain Declaration, all the *Betso* Plaintiffs listed in Ex. A and B were U.S. citizens on September 11, 2001. Second, Iran has been a designated state sponsor of terrorism from 1984 to the present. *See State Sponsors of Terrorism*, U.S. DEPARTMENT OF STATE, https://www.state.gov/state-sponsors-of-terrorism/;  22 C.F.R. § 126.1(d) (2006); 31 C.F.R. § 596.201 (2006); *also*, *Havlish I* at *3.  Third, the Court previously found that Iran "provided direct support to Al Qaeda specifically for the [9/11 Terrorist Attacks]." *Id.* at *40. Fourth, as set forth above, the Court has already entered multiple judgments in this MDL against Iran on the issue of liability, after determining, based on a full evidentiary record and hearing, that the "9/11 attacks and the resulting deaths constitute 'extrajudicial killings'" *Id.* at *39, "caused by [Iran's] provision of material support to al Qaeda" *Id.* at *41. As to the sixth element, the evidence in Ex. D through DD firmly establish that all the *Betso* Latent Injury Decedents suffered severe pain and suffering from the 9/11-Related Injuries which ultimately killed them, and all the *Betso* Surviving Family Members suffered emotional injuries as a result.

As to the fifth element - causation, it is respectfully submitted that, based on the evidence discussed below, the *Betso* Plaintiffs have established that Iran's provision of material and direct support or resources for the 9/11 Terrorist Attacks was a proximate cause of the Latent Injury Decedents' fatal 9/11-Related Injuries and resulting pain and suffering, and of the solatium damages suffered by their respective Surviving Family Members.

## VIII.   LATENT INJURY DECEDENTS

The *Betso* Plaintiffs, as personal representatives of the estates of the Latent Injury Decedents listed in Ex. A, seek to recover compensatory damages for the severe pain and suffering endured by Decedents, from the onset of their 9/11-Related Injury to the time of death, under 28 U.S.C. § 1605A(c).

### A.   Iran's Liability to the Latent Injury Decedents

In *Ahearn*, Magistrate Judge Netburn aptly noted that many individuals were gravely harmed as a result of their exposure to the deadly toxins unleashed by the 9/11 Terrorist Attacks:

> "On [9/11] and in the months of search, rescue and cleanup that followed, first responders and ordinary civilians breathed a toxic combination of fumes, smoke, and particulates loaded with asbestos, silica, metals, concrete, and glass. See 9.11 World Trade Ctr. Health Program, Ctrs, for Disease Control & Prevention, Toxins and Heath Impacts (January 24, 2023), https://www.cdc.gov/wtc/exhibition/toxins-and-health-impacts.html Those environmental exposures are linked to aerodigestive conditions, cancers and other fatal diseases. Id." R. & R. at 2, Mar. 3, 2023, ECF No. 8901 (*Ahearn*).

The Latent Injury Decedents, who are identified in Ex. A were first responders involved in the traumatic rescue and recovery operations at Ground Zero, and civilians who worked or lived in the area, on 9/11 and during its immediate aftermath. They were all exposed to the deadly toxins caused by the 9/11 Terrorist Attacks.  As a result, they all developed severe 9/11-Related Injuries, including Interstitial Lung Disease, pulmonary fibrosis, and various cancers, which, ultimately, killed them.

In *Ahearn*, the Court awarded pain and suffering damages to the estates of latent injury decedents. R. & R. Mar. 3, 2023, ECF No. 8901, *recommitted by* Mem. Decision and Order, Mar. 13, 2023, ECF No. 8920;

R. & R. Jul. 18, 2023, ECF No. 9216, *adopted by* Mem. Decision and Order, Aug. 9, 2023, ECF No. 9274. [6]

The plaintiffs in *Ahearn* were, as here, comprised of "those who developed chronic and ultimately fatal medical conditions after 9/11-related environmental exposures ('Latent Injury Decedents') and their surviving family members ('Surviving Family Members')" Mem. Decision and Order at 1, Aug. 9, 2023, ECF No. 9274. In awarding damages for the latent injury decedents' pain and suffering, the Court gave full credence to the VCF's findings and determinations. *See* R. & R. at 10, Mar. 3, 2023, ECF No. 8901 (*Ahearn*).

In the aftermath of the 9/11 Terrorist Attacks, the federal government created the VCF to "provide compensation to any individual (or relatives of a deceased individual) who was physically injured or killed as a result of the terrorist-related aircraft crashes" of 9/11. 49 U.S.C. § 40101 note.

The VCF closed in 2004 but reopened in 2011 under the James Zadroga 9/11 Health and Compensation (Zadroga) Act, Pub. L. No. 111-347, 124 Stat. 3623 (2011) (codified at 26 U.S.C. § 5000C, 42 U.S.C. § 300mm, and 49 U.S.C. § 40101 note). In 2019, the VCF was permanently reauthorized under the Pub. L. No. 116-34, 133 Stat. 1040 (2019) (codified at 49 U.S.C. § 40101 note). *See also,* R. & R. at 3, Mar. 3, 2023, ECF No. 8901 (*Ahearn*).

The statute that created the current VCF also established the World Trade Center Health Program to provide medical monitoring and health services to certain 9/11 first responders and other 9/11 survivors. Zadroga Act § 101. *Id.*

The VCF adjudicates claims for victims eligible for compensation who were physically injured or died "as a direct result" of the 9/11 Terrorist Attacks. 28 CFR §§ 104.1, 104.2(b).

Specifically, as outlined by Magistrate Judge Netburn in *Ahearn*:

> "Under the current VCF regime, claimants are entitled to compensation if they can, among other things, show that:

---

[6] The Jul. 18, 2023 Report incorporated the content of the Mar. 3, 2023 Report at 2, n.2, and the July 18, 2023 Report was adopted in full by the Aug. 9, 2023 Mem. Decision and Order at 2.

(1) They were present at a '9/11 crash site' between September 11, 2001, and May 30, 2002;

(2) they suffered a 'WTC-Related Physical Health Condition', or a physical injury resulting from the 9/11 Terrorist Attacks; and

(3) their injury or condition was a 'direct result' of the crashes or the rescue, recovery, or debris-removal efforts.

28 C.F.R. § 104.2. To qualify, a claimant must be examined by the WTC Health Program or a private physician and obtain a certification that his 9/11-related exposure was 'substantially likely to be a significant factor in aggravating, contributing to, or causing' his condition. 42 U.S.C. § 300mm-22(a)(1)(A)(i). Once approved, the claimant—or, in the case of a decedent, a personal representative—receives an eligibility decision letter from the VCF confirming the agency's findings." R. & R. at 3, Mar. 3, 2023, ECF No. 8901 (*Ahearn*). *See also*, Ex. C.

Magistrate Judge Netburn also noted that the eligibility determination letters issued by the VCF "reflect the agency's conclusion that a person's injuries were a 'direct result' of the 9/11 Attacks. 28 C.F.R. § 104(a)", *Id.* at 10; and that such proof establishes that the 9/11 Terrorist Attacks were a substantial factor in causing the latent injury decedent's medical condition(s):

"...The VCF issues these letters only after a physician determines that a person's 'exposure to airborne toxins, any other hazard, or any other adverse condition resulting from the [9/11 Attacks] . . . is substantially likely to be a significant factor in aggravating, contributing to, or causing the illness or health condition.' 42 U.S.C. § 300mm-22(a)(1)(A)(i). In short, the VCF letters tell us that 9/11 triggered the Latent Injury Decedents' illnesses.

The VCF and the WTC Health Program are best positioned to evaluate these medical facts. Together these programs leverage the expertise of medical experts and rigorous research. [citations omitted]. And the eligibility determination process incorporates robust procedural protections. [citations omitted]. <u>The Court is confident in the quality of the conclusions the VCF reaches and sees no reason to duplicate these efforts by requiring MDL plaintiffs to submit medical records and retain medical experts. Accordingly, the Court accepts the VCF eligibility determination letters as evidence establishing that 9/11 was a substantial factor leading to the Latent Injury Decedents' medical conditions</u>." (underscore added) *Id.* at 9-10.

14

After pointing out that the VCF eligibility determination letters were unclear, as to whether they were issued in regard to a personal injury claim and/or a deceased claim, *Id.* at 4, 11, Magistrate Judge Netburn determined that "Declarations from family members…reasonably establish that each Latent Injury Decedent died from 9/11-related conditions" *Id.* at 11, and thus, "together with the VCF letters and the Court's *Havlish I* findings, the evidence establishes that Iran's conduct was a substantial factor leading to the Latent Injury Decedents' deaths." *Id.*

The Court in *Ahearn* adopted Magistrate Judge Netburn's findings, concluding that the VCF eligibility determination letters, coupled with the surviving family member affidavits, established proximate cause, thereby rendering Iran liable to the latent injury decedents:

> "The Latent Injury Decedents establish proximate cause through the 'substantial factor' and 'reasonably foreseeability' tests. *(Id.* at 9-13.) Representatives for decedents provided Victim Compensation Fund ("VCF") eligibility determination letters noting any illnesses triggered by the 9/11 Attacks and affidavits attesting to death from the specified illnesses. *(See Ahearn* Decl., ECF No. 8348; *Alcabes* Decl., ECF No. 8352; *Anderson* Decl., ECF No. 8356; *Mandelkow* Decl., ECF No. 8360; *Basci* Decl., ECF No. 8367; *Asciutto* Decl., ECF No. 8371; *Amin* Decl., ECF No. 8375; Suppl. Letter.) <u>The evidence shows that the Defendant's actions were a ''substantial factor' in the sequence of events that led to'' the decedents' latent injuries</u>. *(See* Mar. 3, 2023 R. & R. at 9-11 (citation omitted).) <u>Further, it was 'reasonably foreseeable' that, as a consequence of Iran's material support to al Qaeda for the 9/11 Attacks, the unsafe environment created by carcinogens from building materials and jet fuel would result in latent, and potentially fatal, injuries. *(Id.* at 12-13.) Thus, the Latent Injury Decedents demonstrate proximate cause and are entitled to relief</u>." (underscore added) Mem. Decision and Order at 3, Aug. 9, 2023, ECF No. 9274 (*Ahearn*).

In the case at bar, Ex. D through DD contain the <u>same</u> type of evidence, for <u>each</u> Latent Injury Decedent, that the Court in *Ahearn* held established proximate cause and, thus, Iran's liability to the latent injury decedents: (i) a VCF eligibility determination letter stating that Decedent "met the eligibility criteria established in the statute and regulations" and was "found eligible" for

the "injury" specified therein ("VCF Eligibility Determination Letter"), s*ee, e.g.,* Ex. Y, Estate of Lawrence J. Sullivan, Jul. 6, 2017 VCF Eligibility Determination Letter ("decedent has been found eligible for…Malignant Neoplasm of Duodenum With Metastasis"); and (ii) the *Betso* Plaintiff Affidavits attesting that their Latent Injury Decedent's VCF-eligible injury was a substantial cause of their death. Thus, it is respectfully submitted that such proof establishes proximate cause, and, therefore, Iran's liability to the estates of the Latent Injury Decedents identified in Ex. A.

Additionally, Ex. D through DD also contain VCF documents identifying the type of Award that was issued to the personal representative of each Latent Injury Decedent, specifically, a VCF Award letter and "Award Detail" which provides a breakdown of the Award. The VCF Awards Detail show that each Latent Injury Decedent was issued an award for a "Personal Injury Claim (Losses up to Date of Death)" and for a "Deceased Claim (Losses from Date of Death)", thereby establishing that, as to each of the Latent Injury Decedents, the VCF determined their eligible medical condition was a substantial cause of their death. *See, e.g.,* Ex. Y, Estate of Lawrence J. Sullivan, (VCF Award Detail issued for a "Personal Injury Claim" and for a "Deceased Claim" and the "Eligible Conditions Considered in Award" correspond with those listed in the VCF Eligibility Determination Letter - "Malignant Neoplasm of Duodenum with Metastasis").[7]

Thus, these VCF Awards Detail, coupled with the VCF Eligibility Determination Letters, also firmly establish proximate cause, and, therefore, Iran's liability to the Latent Injury Decedents.

Based on the foregoing, along with the findings in *Havlish I*, it is respectfully requested that the Court find Iran liable to the estates of the Latent Injury Decedents listed in Ex. A.

---

[7] Regarding Decedents Ronald Cohen (Ex. F), James DeNuzio (Ex. H), Thomas Greaney (Ex. J), Eugene McCarey (Ex. O), William Quick (Ex. R) Raymond Ragucci (Ex. S), Elisabeth Temin (Ex. Z), Franco Trapani (Ex. BB), see Papain Declaration at 4, n. 4.

B. __Awards for the Latent Injury Decedents' Pain and Suffering__

The *Betso* Plaintiff Affidavits describe, in poignant detail, the debilitating nature of their loved one's latent injuries and the profound physical and mental suffering that each Decedent endured, from the onset of their illness to the date of death. *See, e.g.*, Ex. Y, Estate of Lawrence J. Sullivan, Aff. of Decedent's daughter, Erin Ann Pugliese.

During their years of suffering, each Decedent's 9/11-Related Injury surely served as a constant reminder of the harrowing events of 9/11, and its immediate aftermath.

In *Ahearn*, Magistrate Judge Netburn drew upon the Court's experience in adjudicating pain and suffering awards for both individuals who were killed on 9/11 and those who were injured on 9/11 but survived, in determining that compensatory damages of $7 million to each of the latent injury decedent's estates for their pain and suffering was warranted:

> "The Court draws from its experience adjudicating both categories of claims…Because of their 9/11-related environmental exposures, the Latent Injury Decedents developed serious, painful health conditions that required years of treatment before ultimately killing them. Like the personal injury plaintiffs, they lived with the physical and emotional consequences of the 9/11 Attacks for many years. Their deteriorating health served as a constant reminder of the harrowing experiences of that day. For these reasons, the Court agrees that a framework with a baseline award and opportunities for upward or downward departures is appropriate for plaintiffs with latent injuries.
>
> Plaintiffs request baseline awards of $7 million for all but two estates. The Court agrees that the Latent Injury Decedents should be awarded a baseline of $7 million as a reflection of the 'severe' nature of the medical conditions that killed each plaintiff." (underscore added) R. & R. at 17-18, Mar. 3, 2023, ECF No. 8901 (*Ahearn*).

The Court adopted Magistrate Judge Netburn's determinations. Mem. Decision and Order at 5-6, Aug. 9, 2023, ECF 9274.

The Court's decision in *Ahearn* should apply equally to the Latent Injury Decedents in the case at bar, and therefore, it is respectfully requested that the Court award $7 million to each of

17

the estates of the Latent Injury Decedents listed in Ex. A, for the severe pain and suffering that they endured from the onset of their 9/11-Related Injury to the time of death.

## IX.    SURVIVING FAMILY MEMBERS

By this motion, each Surviving Family Member identified in Ex. B seeks to recover solatium damages for the emotional injuries they suffered as an immediate family member of a Latent Injury Decedent.

The *Betso* Plaintiff Affidavits, which are contained within Ex. D through DD attest to the emotional suffering that each Surviving Family Member suffered by reason of their loss.

### A.    Iran's Liability for Solatium Damages Suffered by Surviving Family Members of Latent Injury Decedents

Under FSIA § 1605A, family members of a decedent may recover solatium damages for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of a decedent's society and comfort. *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005).

The Court in this MDL has, on multiple occasions, awarded solatium damages to surviving family members of those who were killed in the 9/11 Terrorist Attacks *See, e.g.,* R. & R. at 11, Jul. 30, 2012, ECF No. 2618 (*Havlish*); Order of Further Partial Judgment, Jun. 16, 2016, ECF No. 3300 (*Ashton*); R. & R. at 9, Oct. 12, 2016, ECF No. 3358 (*Hoglan*); R. & R. at 9, Oct. 14, 2016, ECF No. 3363 (*Hoglan*); Order of Partial Final Default Judgments, Jul. 31, 2017, ECF No. 3666 (*Burnett*); Corrected Order of Partial Final Default Judgments, June 8, 2018, ECF No. 4023 (*Burnett*).

#### (i).   *Ahearn* Decision

In a case of first impression, the Court in *Ahearn* declined to award solatium damages to the surviving family members of latent injury decedents. R. & R. at 13-20, Mar. 3, 2023, ECF No. 8901,

*recommitted by* Mem. Decision and Order at 3, Mar. 13, 2023, ECF No. 8920; R. & R. at 3, Jul. 18, 2023,

ECF No. 9216, *adopted by* Mem. Decision and Order at 4-5, Aug. 9, 2023, ECF No. 9274 (*Ahearn*).

In declining to award solatium damages, Magistrate Judge Netburn stated, in pertinent part:

> "The Surviving Family Members allege that Iran's support for al Qaeda led to the 9/11 Attacks, which created an environmental hazard that exposed the Latent Injury Decedents to toxins that, years later, caused severe medical conditions, which eventually resulted in their family members' deaths, and that those deaths—not the immediate shock and terror from the attack—caused the plaintiffs' emotional injuries. Even if their injures were foreseeable, that 'chain of causation is far too long to constitute proximate cause.' MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP, 43 F. Supp. 3d 309, 314 (S.D.N.Y. 2014) (cleaned up). The Court therefore declines to impose liability on Iran for the Surviving Family Members' claims.
> The Court does not reach this conclusion lightly. As always, it is mindful of the extraordinary loss plaintiffs in this litigation have experienced—a loss that is no less profound because it came years after the 9/11 Attacks. This decision is not a referendum on that loss or the value of the plaintiffs' relationships with their families. Some will consider it an arbitrary line to draw. But the Court must draw lines, and they must be based in the law. This decision reflects settled tort principles that limit the scope of liability for emotional harms and define proximate cause. <u>On this record</u>, the Court cannot find that the Surviving Family Members have demonstrated causation." (underscore added) R. & R. Mar. 3, 2023, ECF No. 8901 at 14-16 (*Ahearn*).

The Court in *Ahearn* adopted Magistrate Judge Netburn's recommendation, holding that:

> "The Report correctly applied proximate cause principles to cabin an otherwise indefinite scope of liability. *(See* Mar. 3, 2023 R. & R. at 15.) … the Surviving Family Members represent the creation of "a potentially unlimited class" of indirect plaintiffs related to current or even future latent injury decedents. *(See* Mar. 3, 2023 R. & R. at14-15 (citing *Davis v. Islamic Republic of Iran,* 882 F. Supp. 2d 7, 14 (D.D.C. 2012).) Surviving Family Members' harms, although significant, no longer have the "reasonable connection" to the Defendant's conduct that proximate cause requires for holding Defendant liable for such harms. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229, 235 (2d Cir.1999) [quote omitted]. Because the Surviving Family Members fail to establish proximate cause, Magistrate Judge Netburn correctly

determined that Iran is not liable to the Surviving Family Members. *(Id.* at 16.)" Mem. Decision and Order at 4-5, Aug. 9, 2023, ECF No. 9274.

In support of the within motion, and in the interests of judicial economy, the *Alexander* Plaintiffs adopt and incorporate by reference herein the arguments made by plaintiffs' counsel in *Ahearn*, in its Objections to that part of Magistrate Judge Netburn's Mar. 3, 2023 Report, ECF No. 8901, and Jul. 18, 2023 Report, ECF No. 9216, which recommended dismissal of the surviving family member solatium claims. *See Ahearn*, 20-cv-00355 (GBD) (SN), Objs. to R. & R. at 6-17, ECF No. 91.

### (ii). New Evidence Submitted in Support of Awarding Solatium Damages to Surviving Family Members of Latent Injury Decedents

In asking this Court to award solatium damages caused by the death of the Latent Injury Decedents, it is respectfully requested that the Court consider certain evidence regarding VCF deceased awards, which, upon information and belief, was not part of the record in *Ahearn*.

As noted above, under FSIA § 1605A, immediate family members of a decedent may recover solatium damages for "mental anguish, bereavement, and grief... as well as the harm caused by the loss of a decedent's society and comfort". *Dammarell,* 281 F. Supp. 2d at 196, vacated on other grounds, 404 F. Supp. 2d 261.

Similarly, on a VCF deceased claim, the Regulations provide for awards of "Non-Economic Loss" to a decedent's spouse and qualifying dependents. 28 CFR § 104.44; *see also,* September 11th Victim Compensation Fund Policies and Procedures, Section 2.1.a at *https://www.vcf.gov/policy/calculation-loss*; Ex. EE. The VCF statute defines "Non-Economic Loss" as:

> "[L]osses for physical and <u>emotional pain</u>, suffering, inconvenience, physical impairment, <u>mental anguish</u>, disfigurement, loss of enjoyment of life, <u>loss of society and companionship</u>, <u>loss of consortium</u> (other than loss of domestic service), hedonic damages, injury to reputation, and all other nonpecuniary losses of any nature." (underscore added) Air Transportation Safety and System

Stabilization Act, PL 107–42, September 22, 2001, 115 Stat 230;
*see also,* Ex. EE.

It is thus respectfully submitted that a VCF award of Non-Economic Losses to spouses and dependents of a deceased victim is akin to an award of solatium damages under FSIA § 1605A.

Further proof of such is evinced by the fact that, as with a solatium damages award under FSIA § 1605A, any VCF noneconomic award issued to a decedent's spouse and/or qualifying dependent(s) is paid "directly" to the victim's spouse and dependents and, i.e., they are <u>direct</u> awards that do not pass through decedent's estate. *See* Ex. EE, <u>September 11th Victim Compensation Fund of 2001, Compensation for Deceased Victims, Distribution Plain Information</u>; *also*, https://www.justice.gov/archive/victimcompensation/distribution_plan_example.html.

In awarding Non-Economic Loss in deceased claims, the VCF draws no distinction between spouses and dependents of those killed in the 9/11 Terrorist Attacks and those who developed a fatal 9/11-Related Injury.

Indeed, in the case at bar, spouses and qualifying dependents of Latent Injury Decedents were awarded "Non-Economic Loss" on a Deceased Claim. *See, e.g.,* Ex. Y, Estate of Lawrence Sullivan, VCF Award Detail, Deceased Claim, "Non-Economic Loss – Spouse/Dependent(s)".

As noted, Magistrate Judge Netburn found that the VCF "eligibility determination process incorporates robust procedural protections [citation omitted]", R. & R. at 10, Mar. 3, 2023, ECF No. 8901 (*Ahearn*), and that the "Court is confident in the quality of the conclusions the VCF reaches…" *Id.* It is respectfully requested that the Court give equal consideration to the fact that, in awarding solatium-type damages directly to spouses and qualifying dependents of a latent injury decedent, the VCF necessarily determined that such losses were a direct result of the 9/11 Terrorist Attacks.

In cases involving decedents killed in the 9/11 Terrorist Attacks, the Court has awarded solatium damages to immediate family members who, though not physically present at the site of

the terrorist attacks, were nevertheless intended victims of the terrorist attacks. *See* R. & R., Jul. 30, 2012, ECF No. 2618 (*Havlish*); R. & R., Dec. 28, 2015, ECF No. 3175 (*Ashton*); R. & R., Oct. 12, 2016 (*Hoglan*), ECF No. 3358.

The Surviving Family Members of the Latent Injury Decedents were no less intended or foreseeable victims of the 9/11 Terrorist Attacks than those whose immediate family members were killed in the 9/11 Terrorist Attacks. The harm to the Surviving Family Members was a result of a terrorist attack intended to terrorize victims well beyond those in its immediate path.

Given the additional evidence submitted herein, showing that the VCF awards solatium-type damages to certain immediate family members of 9/11 decedents, including latent injury decedents, coupled with the arguments presented by counsel for plaintiffs in *Ahearn*, and the Court's recognition "of the extraordinary loss plaintiffs in this litigation have experienced – a loss that is no less profound because it came years after the 9/11 Attacks", R. & R. at 16, Mar. 3, 2023, ECF No. 8901 (*Ahearn*), it is respectfully requested that Iran be held liable for solatium damages to the *Betso* Surviving Family Members.

B. <u>**Solatium Awards Requested for Surviving Family Members of Latent Injury Decedents**</u>

Magistrate Judge Frank Maas recognized that "immediate family members" of those killed in the 9/11 Terrorist Attacks suffered and continue to suffer "profound agony and grief" and, "[w]orse yet, . . .are faced with frequent reminders of the events of that day." R. & R. at 10-12, Jul. 30, 2012, ECF No. 2618 (*Havlish*). Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," Magistrate Judge Maas recommended solatium damages in the following amounts: $12,500,000 for a spouse; $8,500,000 for a parent; $8,500,000 for a child; and $4,250,000 for a sibling. *Id.* at 11.

The *Betso* Plaintiff Affidavits in Ex. D through DD attest to the profound emotional losses they each suffered, as a Surviving Family Member of a Latent Injury Decedent. The above-referenced VCF documentation clearly supports the proposition that the emotional grief and sorrow suffered by these Surviving Family Members is legally comparable to those suffered by immediate family members of other 9/11 decedents who have been awarded solatium damages by this Court. The death of each Latent Injury Decedent in this case was the "direct result" of Iran's extreme acts of terror. The *Betso* Plaintiffs, as Surviving Family Members are not attenuated victims, and they all paid an extreme price for the terrorist acts and their consequences. S*ee e.g.,* Ex. Y, Aff. of Decedent Lawrence J. Sullivan's wife and five (5) children.

For all the reasons set forth above, it is respectfully requested that the *Betso* Surviving Family Members be awarded solatium damages in the amounts set forth in Ex. B.

## X.   PREJUDGMENT INTEREST

Additionally, the *Betso* Plaintiffs also ask this Court to direct that prejudgment interest of 4.96% per annum running from September 11, 2001 to the date of judgment be assessed, as was done previously for other plaintiffs who obtained an award in this MDL. *See, e.g.*, Mem. Decision and Order, Oct. 3, 2012, ECF No. 316 *(Havlish)* (awarding prejudgment interest of 4.96 per cent per annum, compounded annually, from September 11, 2001 to date of judgment); *Ahearn* Mem. Decision and Order at 7, Aug. 9, 2023, ECF No. 9274 (awarding prejudgment interest for the pain and suffering damages of latent injury decedents "at rate of 4.96 per cent per annum, compounded annually, from September 11, 2001 to the date of the judgment").

## XI.   PERMISSION TO SEEK OTHER DAMAGES AT A LATER DATE

Previously, in connection with a motion for final judgment on behalf of certain other claimants, this Court asked that, to expedite issuance of final judgments, claimants defer decision as to the appropriate quantum of punitive damages. *See* Order, Oct. 14, 2016, ECF No. 3362.

Accordingly, the *Betso* Plaintiffs ask that this Court allow them to submit future applications for punitive damages, economic damages and/or other damages, to the extent such awards have not previously been ordered, and consistent with any future ruling of this Court.

**XII.**   **CONCLUSION**

For all the reasons set forth herein, the *Betso* Plaintiffs respectfully request that the Court grant the within Motion, and enter an Order: (1) for judgment by default on liability against Iran and in favor of the *Betso* Plaintiffs under FSIA § 1605A; (2) awarding compensatory damages for the Latent Injury Decedents' pain and suffering, in the amount of $7,000,000 per estate to each of the Latent Injury Decedents' estates as set forth in Ex. A; (3) awarding solatium damages to the Surviving Family Members in the amounts set forth in Ex. B; (4) awarding prejudgment interest at a rate of 4.96 percent per annum, compounded annually, from September 11, 2001 to the date of judgment; and (5) permitting the *Betso* Plaintiffs herein to submit future applications for economic damages, punitive damages, and/or other damages consistent with any future rulings of this Court.

Dated: May 7, 2024

Respectfully submitted,

Nicholas Papain
Sullivan Papain Block McManus
Coffinas & Cannavo P.C.
120 Broadway, 27th Floor
New York, NY 10271
Phone: (212) 732-9000
COUNSEL FOR *BETSO* PLAINTIFFS