# EXHIBIT J

# Estate of Thomas Greaney

# VCF Documentation



September 11th
Victim Compensation Fund

January 9, 2018

LIAM GREANEY
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH& CANNAVO P.C.
120 BROADWAY 18TH FLOOR
NEW YORK NY  10271

Dear LIAM GREANEY:

The September 11th Victim Compensation Fund ("VCF") previously sent you an Eligibility determination letter on February 02, 2017 for the claim you submitted on behalf of THOMAS GREANEY.  Your claim number is VCF0080494.  The letter included a list of condition(s) deemed eligible for compensation.  During subsequent review of your claim, it was discovered that one or more of your eligible conditions was missing from that list.  This letter provides the complete list of conditions for which you are eligible for compensation and supersedes and replaces the previous letter.

**The Decision on your Claim**

The VCF has determined that you meet the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, you have been found eligible for the injuries listed below.  *This list includes all injuries for which you have been found eligible.*

- ASTHMA, UNSPECIFIED, UNSPECIFIED STATUS
- MALIGNANT NEOPLASM LIVER NOT SPEC AS PRIMARY/SEC
- Injuries that were found eligible by the first iteration of the September 11th Victim Compensation Fund that operated from 2001 to 2004 ("VCF1")

Although your VCF1 injuries are again eligible under the current VCF, it does not necessarily mean that you are entitled to receive additional compensation.  Because you were previously compensated by VCF1 for some or all of these injuries, you must show that the condition has worsened, that you have been diagnosed with a new condition, or that you have a new loss associated with a previously eligible condition.  For example, if you have been determined to be disabled from these conditions since receiving your VCF1 award and that award did not include future lost earnings, you may be eligible for that loss now.  Note that the amount of compensation you received in VCF1 will be considered when determining whether additional compensation should be awarded.  As a general rule, the compensation you receive in VCF2 will be calculated based on the amount of compensation any similarly situated person who filed a claim only in VCF2 would receive; any compensation you received in VCF1 will then be applied as an adjustment to the award.  For more information regarding the ability to participate in the VCF after submitting a claim in VCF1, please see the www.vcf.gov website.



September 11th
Victim Compensation Fund

Please note that there are several reasons why an injury that you think should be eligible is not listed above. For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

**What Happens Next**

You submitted the Compensation portion of your claim form. The VCF will contact you if additional information is needed in order to calculate your award. **If you believe your new condition(s) changes your compensation claim**, you should amend your claim. For example, if your new condition is the reason you are not able to work, you should provide that information to the VCF by amending your claim. Please see the www.vcf.gov website for additional details on how to amend your claim.

**If your newly eligible condition(s) does not change your compensation claim**, you do not need to take any action at this time.

**If you believe you have eligible injuries that are not being treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating your award, you should amend your claim. If you choose to amend your claim, you must first seek certification for the condition(s) from the WTC Health Program. Seeking certification for your condition provides the VCF with the necessary evidence that the condition is eligible for compensation. Please note, however, that because additional certifications do not necessarily impact the amount of your award, we recommend that you wait to receive your award letter to determine whether to seek certification for any additional condition(s).

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: LIAM GREANEY



September 11th
Victim Compensation Fund

October 22, 2018


LIAM GREANEY
108 MIKAELE PLACE
KULA HI  96790


Dear LIAM GREANEY:

The September 11th Victim Compensation Fund ("VCF") sent you a letter on February 28, 2018 notifying you of the decision on your claim and the amount of your award.  Your claim number is VCF0080494.  That letter included a request for documents that were missing from your claim and are required in order to process your payment.  The VCF has since received the requested documents and this letter provides the details of your award and information on the next steps to be taken on your claim.

Based on the information you submitted, the VCF has calculated the amount of your eligible loss as **$403,652.60**.  This determination is in accordance with the requirements of the Reauthorized Zadroga Act.  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions included in this determination.

In making this determination, the VCF considered the $100,000.00 award you received from the first VCF ("VCF1"), as well as your newly certified conditions.  The calculation of your current award takes into account your VCF1 non-economic loss award.

The VCF did not compute any lost earnings for your claim.  Although you provided evidence of Firefighter Greaney's disability, the condition on which the disability determination is based is not a condition for which he has been found eligible for compensation from the VCF.  If you believe this is an error, or if you have additional information demonstrating that the basis of Firefighter Greaney's disability is an eligible condition, please see the section below on how to amend your claim and the timing for submitting an amendment.

No non-routine legal service expenses are approved for reimbursement for this claim.

As the Personal Representative, you are required to distribute any payment received from the VCF on behalf of the victim to the eligible survivors or other recipients in accordance with the applicable state law or any applicable ruling made by a court of competent jurisdiction or as provided by the Special Master.

## What Happens Next

The VCF will deem this award to be final and will begin processing the payment on your claim unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below.  If you do not appeal, the Special Master will authorize the payment on your claim within 20 days of the end of the 30-day appeal period.  Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the bank account



September 11th
Victim Compensation Fund

designated on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.

- **Appealing the Award**: You may request a hearing before the Special Master or her designee if you believe the amount of your award was erroneously calculated or if you believe you can demonstrate extraordinary circumstances indicating that the award does not adequately address your claim. **If you choose to appeal, your payment will not be processed until your appeal has been decided**.

To request a hearing, you must complete and return the enclosed Compensation Appeal Request Form **and** Pre-Hearing Questionnaire no later than **30 calendar days** from the date of this letter. The VCF will notify you in writing of your scheduled hearing date and time and will provide additional instructions to prepare for your hearing. If both forms are not submitted with complete information within 30 days, you have waived your right to appeal and we will begin processing your payment.

- **Amending your Claim**: You may amend your claim in the future if your circumstances change and you have new information to provide to the VCF. For example, you may amend if the WTC Health Program certifies additional physical conditions for treatment, if you have information in support of your claim that was not submitted to the VCF when your award was determined and that you believe would affect the amount of your award, or if you have incurred additional economic loss due to an eligible condition. The VCF will review the new information and determine if it provides the basis for a revised decision. Please see the VCF website for additional details on how to amend your claim and the specific circumstances that may be appropriate to request an amendment.

- **Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award. If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment. If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award. If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the Reauthorized Zadroga Act. As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.



Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: WENDELL TONG



September 11th
Victim Compensation Fund

# Award Detail

Claim Number: VCF0080494
Decedent Name: THOMAS GREANEY

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | |
| Mitigating or Residual Earnings | |
| **Total Lost Earnings and Benefits** | $0.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | |
| Social Security Disability Benefits | |
| Workers Compensation Disability Benefits | |
| Disability Insurance | |
| Other Offsets related to Earnings | |
| **Total Offsets Applicable to Lost Earnings** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | |
| Replacement Services | |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | $150,000.00 |
| | |
| **Subtotal Award for Personal Injury Claim** | $150,000.00 |



September 11th
Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | |
| SSA Survivor Benefits | |
| Worker's Compensation Death Benefits | |
| Other Offsets related to Earnings | |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | |
| Burial Costs | $10,052.60 |
| **Total Other Economic Losses** | $10,052.60 |
| | |
| **Total Economic Loss** | $10,052.60 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $100,000.00 |
| **Total Non-Economic Loss** | $350,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | |
| Life Insurance | ($106,400.00) |
| Other Offsets | |
| **Total Additional Offsets** | ($106,400.00) |
| | |
| **Subtotal Award for Deceased Claim** | $253,652.60 |



September 11th
Victim Compensation Fund

| Subtotal of Personal Injury and Deceased Claims | $403,652.60 |
|---|---|
| PSOB Offset | |
| Prior Lawsuit Settlement Offset | |
| Previously Paid Personal Injury Award | |
| **TOTAL AWARD** | $403,652.60 |

| Factors Underlying Economic Loss Calculation | |
|---|---|
| Annual Earnings Basis (without benefits) | |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | |

| Eligible Conditions Considered in Award |
|---|
| Asthma, Unspecified, Unspecified Status |
| Malignant Neoplasm Liver Not Spec As Primary/sec |
| VCF1 Eligible Condition |

DOH-1961 (8/2011)

RECORDED DISTRICT
REGISTER NUMBER **5560**

RESIDENCE

**NEW YORK STATE**
**DEPARTMENT OF HEALTH**
# CERTIFICATE OF DEATH

STATE FILE NUMBER

**1. NAME: FIRST** Thomas **MIDDLE** J. **LAST** Greaney

**2. SEX:** MALE ☒ 1  FEMALE ☐ 2

**3A. DATE OF DEATH:** MONTH 01 DAY 05 YEAR 2014 TIME 10:00p m

**4A. PLACE OF DEATH:** (Check one)  HOSPITAL DOA / ER ☐  HOSPITAL OUTPATIENT ☐  HOSPITAL INPATIENT ☐  NURSING HOME ☐  PRIVATE RESIDENCE ☒☒  HOSPICE FACILITY ☐  OTHER (Specify) ☐

**3B. IF FACILITY, DATE ADMITTED:** MONTH  DAY  YEAR

**4C. NAME OF FACILITY:** (If not facility, give address) 139 Mill Road

**4D. CITY / TOWN LOCALITY:** (Check one and specify) CITY ☐ VILLAGE ☐ TOWN ☒ Olive

**4E. COUNTY OF DEATH:** Ulster

**4F. MEDICAL RECORD NO.**

**4G. WAS DECEDENT TRANSFERRED FROM ANOTHER INSTITUTION?** (If yes, specify institution name, city or town, county and state) NO ☒ YES ☐

**5. DATE OF BIRTH:** MONTH 10 DAY 27 YEAR 1953

**6A. AGE IN YEARS:** 60

**6B. IF UNDER 1 YEAR ENTER:** months  days

**6C. IF UNDER 1 DAY ENTER:** hours  minutes

**7A. CITY AND STATE OF BIRTH:** (If not USA, Country and Region/Province) Rockaway Beach, NY

**7B. IF AGE UNDER 1 YEAR, NAME OF HOSPITAL OF BIRTH:**

**8. SERVED IN U.S. ARMED FORCES?** (Specify years) NO ☐  YES ☒ X

**9. DECEDENT OF HISPANIC ORIGIN?** Check the boxes that best describe whether the decedent is Spanish/Hispanic/Latino. ☒ X No, not Spanish/Hispanic/Latino ☐ Yes, Mexican, Mexican American, Chicano ☐ Yes, Puerto Rican ☐ Yes, Cuban ☐ Yes, Other Spanish/Hispanic/Latino

**10. DECEDENT'S RACE:** Check one or more boxes to indicate what the decedent considered himself or herself to be. A ☒ X White/Caucasian  B ☐ Black or African American  C ☐ Asian Indian  D ☐ Chinese  E ☐ Filipino  F ☐ Japanese  G ☐ Korean  H ☐ Vietnamese  I ☐ Native Hawaiian  J ☐ Guamanian or Chamorro  K ☐ Samoan  L ☐ American Indian or Alaska Native (specify)  P ☐ Other Asian (specify)  Q ☐ Other Pacific Islander (specify)  O ☐ Other (specify)

**11. DECEDENT'S EDUCATION:** Check the box that best describes the highest degree or level of school completed at the time of death. 1 ☐ < 8th grade  2 ☐ 9th-12th grade; no diploma  3 ☐ High school graduate or GED  4 ☐ Some college credit, but no degree  5 ☒ X Associate's degree  6 ☐ Bachelor's degree  7 ☐ Master's degree  8 ☐ Doctorate/Professional degree

**12. SOCIAL SECURITY NUMBER:** 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

**13. MARITAL STATUS:** NEVER MARRIED ☐  MARRIED ☒  WIDOWED ☐  DIVORCED ☐  SEPARATED ☐

**14. SURVIVING SPOUSE:** Enter birth name of spouse if married or separated.

**15. USUAL OCCUPATION:** (Do not enter retired) Fire Fighter - LT.

**16. KIND OF BUSINESS OR INDUSTRY:** Firematics

**17. NAME AND LOCALITY OF COMPANY OR FIRM:** FDNY, NY, NY

**16A. RESIDENCE:** (State or Country if not USA) New York

**16B. County or Region/Province** if not USA: Ulster

**16C. LOCALITY:** (Check one and specify) CITY ☐ VILLAGE ☐ TOWN ☒ Olive

**16E. IF CITY OR VILLAGE, IS RESIDENCE WITHIN CITY OR VILLAGE LIMITS?** ☐ YES ☐ NO  IF NO, SPECIFY TOWN:

**16D. STREET AND NUMBER OF RESIDENCE:** 139 Mill Road

**16. ZIP CODE:** 12461

**17. BIRTH NAME OF FATHER / PARENT:** FIRST William MI LAST Greaney

**18. BIRTH NAME OF MOTHER / PARENT:** FIRST Evelyn MI LAST Diem

**19A. NAME OF INFORMANT:** Liam Greaney

**19B. MAILING ADDRESS:** (Include zip code) 8100 Shore Ft. Pky, 11 D, Rockaway Beach, NY 11693

**20A. METHOD OF DISPOSITION:** ☐ BURIAL ☐ CREMATION ☒ ENTOMBMENT ☐ HOLD ☐ DONATION ☐ REMOVAL (Specify)

**20B. DATE OF DISPOSITION:** 01 11 2014

**20C. PLACE OF BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION:** Green Wood Cemetery

**20D. LOCALITY:** (City or town and state) Brooklyn, New York

**21A. NAME AND ADDRESS OF FUNERAL HOME:** Denis S. O'Connor, Inc., 9105 Beach Channel Dr. Rockaway Beach, NY 11693

**21B. REGISTRATION NUMBER:** 00447

**22A. NAME OF FUNERAL DIRECTOR:** Jack M. Wilsey

**22B. SIGNATURE OF FUNERAL DIRECTOR:** Jack M. Wilsey

**22C. REGISTRATION NUMBER:** 13842

**23A. SIGNATURE OF REGISTRAR:** Susan M. Henderson

**23B. DATE FILED:** MONTH 1 DAY 7 YEAR 2014

**24A. BURIAL OR REMOVAL PERMIT ISSUED BY:** Susan M. Henderson

**24B. DATE ISSUED:** MONTH 1 DAY 7 YEAR 2014

ITEMS 25 THRU 33 COMPLETED BY CERTIFYING PHYSICIAN -- OR -- CORONER/CORONER'S PHYSICIAN OR MEDICAL EXAMINER

**25A. CERTIFICATION:** To the best of my knowledge, death occurred at the time, date and place and due to the causes stated.

**Certifier's Name:** JRL FROUDE **License No.:** 169627 **Signature:**

**25B. DATE SIGNED:** MONTH  DAY 7 YEAR 2014

**25C. Certifier's Title:** ☒ Attending Physician  ☐ Physician acting on behalf of Attending Physician  ☐ Coroner  ☐ Medical Examiner / Deputy Medical Examiner **Address:** 360 Washington Avenue, Kingston, NY 12401

**25B. If coroner is not a physician, enter Coroner's Physician's name & title:** **License No.:** **Signature:** **Address:**

**25C. If certifier is not attending physician, enter Attending Physician's name & title:** **License No.:** **Address:**

**26A. Attending physician attended decedent:** FROM MONTH 10 DAY 1 YEAR 2013 TO MONTH 1 DAY 5 YEAR 2014

**26B. Deceased last seen alive by attending physician:** MONTH 12 DAY 27 YEAR 2013

**26C. Pronounced Dead ON** MONTH 1 DAY 5 YEAR 2014 AT TIME 22:00

**27. MANNER OF DEATH:** ☒ NATURAL CAUSE  ☐ ACCIDENT  ☐ HOMICIDE  ☐ SUICIDE  ☐ UNDETERMINED CIRCUMSTANCES  ☐ PENDING INVESTIGATION

**28. WAS CASE REFERRED TO CORONER OR MEDICAL EXAMINER?** ☒ NO ☐ YES

**29A. AUTOPSY?** ☒ NO ☐ YES  ☐ REFUSED

**29B. IF YES, WERE FINDINGS USED TO DETERMINE CAUSE OF DEATH?** ☐ NO ☐ YES

**30. DEATH WAS CAUSED BY:** (ENTER ONLY ONE CAUSE PER LINE FOR (A), (B), AND (C).)

SEE INSTRUCTION SHEET FOR COMPLETING CAUSE OF DEATH

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

**PART I. IMMEDIATE CAUSE:** (A) LIVER FAILURE

DUE TO OR AS A CONSEQUENCE OF: (B) HEPATOCELLULAR CARCINOMA

DUE TO OR AS A CONSEQUENCE OF: (C) CIRRHOSIS

**PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN PART I (A):**

**DID TOBACCO USE CONTRIBUTE TO DEATH?** 1 ☐ NO  2 ☐ PROBABLY  3 ☐ UNKNOWN ☐ YES

**31A. INJURY DATE:** MONTH  DAY  YEAR

**31B. HOUR:**

**31B. INJURY LOCALITY:** (City or town and county and state)

**31C. DESCRIBE HOW INJURY OCCURRED:**

**31D. PLACE OF INJURY:**

**31E. INJURY AT WORK?** ☐ NO ☐ YES

**31F. IF TRANSPORTATION, SPECIFY:** ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (specify)

**32. WAS DECEDENT HOSPITALIZED IN LAST 2 MONTHS?** ☐ NO ☐ YES

**33. IF FEMALE:** ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within past year

**33B. DATE OF DEATH:** MONTH  DAY  YEAR

# Family Member Affidavits

Alison Greaney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                          03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------------- X      **AFFIDAVIT OF**
EVELYN BETSO, et al.,                                           **ALISON GREANEY**


                                        Plaintiffs,        21-CV-01394 (GBD)(SN)

                        V.

ISLAMIC REPUBLIC OF IRAN,

                                        Defendant.
------------------------------------------------------------------- X

STATE OF HAWAII            )
                           : SS
COUNTY OF HONOLULU )

        ALISON GREANEY, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
3427 McCorriston Street, Honolulu, Hawaii 96815.

        2.      I am currently 43 years old, having been born on June 17, 1980.

        3.      I am the daughter of Decedent, Thomas Greaney, upon whose death my
claim is based, and submit this Affidavit in connection with the present motion for a
default judgment and in support of my solatium claim.

        4.      My father passed away from hepatocellular carcinoma on January 5, 2014 at the
age of 60. It was medically determined that this illness was causally connected to his exposure to
the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.      My father joined the Fire Department of New York in 1977 and gave 25 years of dedicated service to the City of New York. He retired as an FDNY Lieutenant with Ladder 175/Engine 332 in Brooklyn, NY, and finally retired in 2003. From the beginning of his career with FDNY until his death, my father remained very close with Ladder 108 Engine 216 members in Williamsburg, Brooklyn, NY. Firefighters work a lot. I remember attending many annual company firehouse picnics, Christmas parties, camping and skiing trips, and fishing tournaments with our FDNY family. After school and during the summer, my dad would take us out on his boat and teach us how to fish and surf. What has had a particularly lasting impact on my life is the relationship that developed between my dad and me after the events of 9-11 and during the clean-up efforts of Ground Zero. We became very close and spoke often, almost daily. For many months, I accompanied my dad to numerous FDNY and 911-related funerals until I moved to Hawaii in 2002.

6.      My Dad would visit annually until the year he died. We enjoyed traveling to the other islands and going on adventures. One special memory that I have is a trip that my dad and I took to the Big Island of Hawaii to witness the eruption of Kilauea in Volcano Hawaii. We hiked the lava fields in Hawaii's Volcano National Parks late at night to watch the volcanic activity and witness the lava flow across the highway. My Dad had a great impact on the decisions that I made throughout my career. He supported me as I worked to achieve my master's degree from the University of Hawaii and flew from NYC to attend my graduation. I will never forget his unwavering friendship and support in my early adulthood.

7.      On the day of 9/11/01, I was attending college in Emmitsburg, MD near Camp David, outside of Washington, D.C. I had just arrived at my first class of the day when I heard the news that both towers of the World Trade Center were under evacuation and FDNY was on

the scene. I watched the rest of the day's events unfold on the news and could not get a hold of any family members or friends. I later learned that my father did not die when the towers collapsed. That morning my father, who did carpentry work on the side, was installing a back-deck for my cousin, Kathleen Andrews and her family in Fairfield, CT. Kathleen's brother- in-law, Michael Andrews, worked at Cantor Fitzgerald in Tower One of the World Trade Center. Michael died on 9/11 in the terrorist attacks. That morning, my dad left Connecticut and went down to the World Trade Center, where he stayed for many days before returning home. In fact, as a senior member of the FDNY, my dad worked at the pile relentlessly for months, leading rescue and recovery operations to recover the bodies of his missing FDNY brothers, while also making time to attend the funerals of friends and family. He worked at the site until the Summer of 2002 when recovery operations ceased and he retired shortly after, in 2003.

8.  Initially, my father lied to me about the onset of his illness. When he was making visits to the FDNY clinic or to Memorial Sloan Kettering Cancer Center, he told me that he was at the dentist. He was seen at Sloan quickly and his prognosis wasn't good. His cancer was inoperable, and they offered him an experimental treatment. Initially, he was very hopeful and thought that the treatment was promising. He had already planned a trip to Hawaii in October of 2013 to celebrate his birthday on the 27th and my daughter's first birthday on the 29th of that month. He decided to begin the treatment and to take the trip to Hawaii anyway. While visiting us he was hospitalized at the Queen's Medical Center in Honolulu, HI. He wasn't responding well to the treatment and had a serious reaction. He stopped the treatment and had no other options. He returned to NY in November 2013, and he died on January 5, 2014. When my father returned to NY, his quality of life deteriorated leading to his death. Prior to my father's diagnosis, he lived a very active and healthy lifestyle. He even grew his own organic food and enjoyed gardening, and swimming.

9.      My dad's condition progressed extremely fast and left time for little preparation for his death. The last time I saw my dad was on his trip to Hawaii in November 2013. At the time of his death, I was a new mother to small children and the loss of my father was devasting. I no longer had his advice, guidance, and companionship. I no longer have a father to share my life with. My children do not have a grandfather and the opportunity for them to develop a relationship with him was taken away. Sadly, we also lost the house that my father built from scratch with his two hands for us after he retired. We couldn't afford to upkeep the home and expenses inherited from my father and were forced to sell it. Since my father's passing, life continues to be very difficult without my father present.

ALISON GREANEY

Sworn before me this

5th day of October 2023

Notary Public   Theresa Lam Poon

Doc. Date: 10/5/2023   # Pages: 5
Notary Name: Theresa Lam Poon   1st — Circuit
Doc. Description: Affidavit

10/5/23

Notary Signature   Date
NOTARY CERTIFICATION

Liam Greaney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                              03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------- X        **AFFIDAVIT OF**
EVELYN BETSO, et al.,                                                    **LIAM GREANEY**


                                    Plaintiffs,        21-CV-01394 (GBD)(SN)

                    V.

ISLAMIC REPUBLIC OF IRAN,

                              Defendant.
-------------------------------------------------------------- X

STATE OF HAWAII           )
                          : SS
COUNTY OF MAUI            )


    LIAM GREANEY, being duly sworn, deposes and says:

1.    I am a plaintiff in the within action, am over 18 years of age, and reside at 108 Mikaele Place, Kula, Hawaii 96790.

2.    I am currently 46 years old, having been born on June 9, 1977.

3.    I am the son of Decedent, Thomas Greaney, upon whose death my claims are based. I submit this Affidavit in support of the present motion for a default money judgment for the claim made on behalf of my father's estate and for my solatium claim. On May 12, 2014, I was issued Letters of Administration as Administrator of my father's estate by the Ulster County Surrogate's Court.

4.    My father passed away from hepatocellular carcinoma on January 5, 2014 at the age of 60It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5. ·   My dad was my best friend. He was an FDNY firefighter and my hero. He enjoyed traveling, cooking, surfing, and fishing on our boat. My dad taught me how to be a man of many trades. My father taught me how to harvest crops, plant seeds and landscape which would come in handy later in life.

6.   On 9/11, my father was a FDNY Lieutenant at Ladder 175. I recall that he spent over three months at Ground Zero assisting with the rescue and recovery. My father sacrificed his life to save others.

7.   On October 15, 2013, my father informed me of the tumor he developed in his liver. I remember that he has been suffering from recurrent stomach pains, but the furthest diagnosis from our minds was cancer. I moved from Hawaii back to New York to care for my father in November of 2013 after witnessing the debilitating state my father has been in. I became his full-time care giver within his last months of life. He depended on me to take him to all of his appointments in the and upkeep his home. With the new responsibilities I had taken on, it became evident that I would not be able to work at the same time. My father passed away in January 2014.

8.   My father's illness and death changed my life in drastically. Unfortunately, as my dad died without having a will, I was appointed as the administrator of his Estate leaving me responsible to handle all his affairs.  I also inherited all his debts, which include his unpaid bills, mortgage, property taxes and insurance while not finding suitable employment until September of 2014. The upkeep of the home and other bills depleted my personal funds and eventually led to me placing the home on the market for sale. During this time, I had no support physically, emotionally, or financially. My father's death ruined my life and left me feeling alone in this world.

Sworn before me this

12 day of September 2023

Tiana Raymondo

Notary public



LIAM GREANEY

Tiana Raymondo

Mairead Greaney Stea

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                          03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

--------------------------------------------------------------- X      **AFFIDAVIT OF**
EVELYN BETSO, et al.,                                          **MAIREAD GREANEY STEA**


                                    Plaintiffs,          21-CV-01394 (GBD)(SN)


               V.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
--------------------------------------------------------------- X
STATE OF CALIFORNIA                    )
                          : SS
COUNTY OF SAN DIEGO                    )


        MAIREAD GREANEY STEA, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
949 16th Street, San Diego, California 92154.

        2.      I am currently 32 years old, having been born on August 24, 1990.

        3.      I am the daughter of Decedent, Thomas Greaney, upon whose death my
claim is based, and submit this Affidavit in connection with the present motion for a
default money judgment and in support of my solatium claim.

        4.      My father passed away from hepatocellular carcinoma on January 5, 2014, at the
age of 60. It was medically determined that this illness was causally connected to his exposure to
the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.      My dad is and will always be my hero. As a child, I remember my dad taking us to Christmas parties, picnics, and fishing trips with the FDNY. I loved being able to tell people that I was Thom Greaney's daughter, and I still am. I've always been very proud to tell my friends about my dad and how incredibly brave he was in life and in death. My dad was a renaissance man and had many different hobbies aside from him his career as a FDNY Lieutenant. He was a fisherman, carpenter, farmer, mentor, chef, and a scholar to name a few. My dad, Thom Greaney, swam laps for at least an hour a day, ate organic vegetables out of his own garden and did not drink alcohol. I can't remember a time when he wasn't in my corner cheering me on. Education was very important to my dad. He knew I wasn't the greatest student, but he stressed the importance behind me continuing my education and having a career that will allow me to support myself. Without his encouragement and voice in my ears, even after his passing, I probably wouldn't have completed education and obtained my master's degree in special education. I know he would be extremely proud of my accomplishment.

6.      When my parents separated, I remember my dad driving down from Upstate New York to spend quality time with me. We would grab a bite to eat and watch a movie with me, but I cherish the moments we spent together. After high school, I followed in my siblings' footsteps and moved to Hawaii to attend college with my dad's full support and encouragement. He would come visit twice a year for a month and we would have an awesome time just exploring the island and enjoying each other's company. When my dad would go back to New York, he would tend to his farm, feed his friends, swim at the YMCA, and plan his next vacation to come and visit.

7.      On September 11, 2001, seemed like an ordinary at first. It was my third day of sixth grade. When the planes hit the towers and the news broke, all of the teachers became visibly distraught. Shortly after, all students were brought to the cafeteria for early dismissal. We still did not know what was going on or why we were leaving at 11AM suddenly. I knew both of my parents were at work. My mom was in Manhattan at NYU and my dad at the fire station in

9.      On January 4, 2014, I headed back to my mom's home in Rockaway from Upstate with my cousin Lynn to get fresh clothes and take a break from it all. It was very overwhelming to not be able to help my dad, but I told him I would be back the next day. In the early hours of January 5th, my dad lost his battle and was at peace—only a week since I returned home to New York from Hawaii. I am forever grateful for the time I was able to spend with him.

10.      My father's illness and death had a tremendous impact on my life. Since my dad's passing, he has made his presence known on multiple occasions reassuring us. Ironically, at my dad's funeral service, the fire alarm went off during my brother Liam's eulogy. However, it was not the only time my father made a grand appearance.

11.      Before my dad's passing, my dad was able to meet my husband and give him his blessing when he asked to take my hand in marriage. Unfortunately, my dad wasn't spared the opportunity to walk me down the aisle, yet anyone who attended my wedding will tell you they felt his presence again on this day regardless of his absence. At our wedding, as the naval chaplain announced the names of our loved ones who couldn't be there on our wedding day, the fire station next door from the venue got a call sending sirens blaring. To this very day, my brother swears that it was a set up, but it wasn't. In perfect timing and my father's fashion, he was there to encourage me yet again and motivate me to go on. Since my father's death, I have also had two daughters who he will never be able to develop a relationship with. My eldest daughter, Jade, will be 3 soon and she asks about her grandpa often since we have pictures of him in our house. It breaks my heart that they will never get to know firsthand the man that her grandfather was and would've been to her and her sister.

Mairead Stea
MAIREAD GREANEY STEA

Sworn before me this

26 day of AUGUST, 2023

Notary public



LUIGI AMBROSE
COMM. #2378448
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
NOVEMBER 10, 2025