# EXHIBIT P

# Estate of John F. McNamara

# VCF Documentation


September 11th
Victim Compensation Fund

March 10, 2015

JENNIFER MCNAMARA
C/O BETH JABLON
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY  10271

Dear JENNIFER MCNAMARA:

Your Eligibility Form for the September 11th Victim Compensation Fund ("VCF") has been reviewed.  You submitted an Eligibility Form on behalf of JOHN MCNAMARA.  Your claim number is VCF0005688.  The Claims Evaluator determined that your Eligibility Form was substantially complete on March 10, 2015.  As stated in the Regulations and on the Eligibility Form, by filing a substantially complete Eligibility Form, the right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors has been waived.[1]  For more information about this topic, please review Frequently Asked Questions ("FAQs") #7.1 - #7.4 on the www.vcf.gov website.

**The Decision on your Claim**

The VCF has determined that the decedent meets the eligibility criteria established in the statute and regulations and that you meet the requirements as the Personal Representative of the decedent.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- METASTATIC COLORECTAL CANCER

Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury.  Additionally, the injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

**What Happens Next**

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim.  Please see the VCF website for details on how to amend your claim.  The VCF will contact the WTC Health Program to confirm the condition is eligible.

---

[1] The Statute (the Air Transportation Safety and System Stabilization Act as amended by the Zadroga Act) and the Regulations are located at http://www.vcf.gov/genProgramInfo.html.



September 11th
Victim Compensation Fund

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any compensation, you should amend your claim.  If you choose to amend your claim, you will need to use the VCF Private Physician process.  The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim. All forms are available on the VCF website under "Forms and Resources."  The website also includes detailed information and instructions on the Private Physician process

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials.  If you have already submitted your Compensation Form, you do not need to take any action at this time.  The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

**Please remember all information and materials must be submitted to the VCF by October 3, 2016.**

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100. Every effort will be made to respond to your inquiries as soon as possible.

Sincerely,

Sheila L.  Birnbaum
Special Master
September 11th Victim Compensation Fund



September 11th
Victim Compensation Fund

October 24, 2019

JENNIFER MCNAMARA
13 HOMAN AVENUE
BLUE POINT NY  11715

Dear JENNIFER MCNAMARA:

The September 11th Victim Compensation Fund ("VCF") sent you a letter on October 22, 2018.  Your claim number is VCF0005688.

You then appealed the determination.  The VCF has considered your appeal and has re-evaluated your claim for compensation.  This letter sets forth the revised award and supersedes and replaces all previous letters.

Based on the information you provided in support of your appeal, the VCF has calculated the amount of your award as **$333,151.08**.  This determination is in accordance with the requirements of the VCF Permanent Authorization Act.  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions included in this determination.  This is the final decision on your appeal.

Your award includes additional replacement services compensation for childcare services.  Based on your testimony that Mr. McNamara was the primary caregiver for your son, we increased the number of childcare hours used in the calculation of the replacement services award to match the hours presumptions for a parent who does not work outside the home.

We did not reduce your FDNY survivor pension offset because, as explained to your attorney by phone on February 27, 2019, we reviewed our previous computation of the offset and found no errors. In addition, our previous computation of the offset was based on the assumption that you received a benefit of $7,500 per month, but the FDNY reported that, as of January 2019, your benefit is $9,143.26 per month. Because your benefit is higher than the benefit we previously used to compute the offset, we did not reduce the offset.

We did not reduce your Public Safety Officers' Benefits Program (PSOB) offset because, although we understand that you have not yet received the full amount of your PSOB award, the amount of the PSOB offset matches the amount that the PSOB reported to the VCF as your paid award.

In reviewing your award on appeal, we corrected a typographical error in the previous lawsuit settlement offset, which increased the offset by five cents.

No non-routine legal service expenses are approved for reimbursement for this claim.

**What Happens Next**

The VCF will begin processing the payment on your claim using the information you provided



September 11th
Victim Compensation Fund

on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF. The Special Master will authorize the payment within 20 days of the date of this letter. Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the designated bank account. **If your payment information has changed, you must call the VCF Helpline immediately at the number below.**

**Amending your Claim**: You may amend your claim in the future if your circumstances change and you have new information to provide to the VCF that you believe warrants additional compensation. The VCF website has important information about the specific circumstances when it is appropriate to request an amendment. For more information and examples of such situations, please refer to "Section 5 – Amendments" in the VCF Policies and Procedures document available under "Forms and Resources" on the VCF website. Please review the information carefully when deciding whether to amend your claim. If you submit an amendment, the VCF will review the new information and determine if it provides the basis for a revised decision.

**Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award. If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment. If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award. If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act. As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: WENDELL TONG



September 11th
Victim Compensation Fund

# Award Detail

Claim Number:    VCF0005688
Decedent Name:    JOHN MCNAMARA

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $0.00 |
| Mitigating or Residual Earnings | |
| **Total Lost Earnings and Benefits** | $0.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | $0.00 |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | $0.00 |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | $250,000.00 |
| | |
| **Subtotal Award for Personal Injury Claim** | $250,000.00 |



September 11th
Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | $2,002,726.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | ($1,916,948.00) |
| SSA Survivor Benefits | ($279,880.00) |
| Worker's Compensation Death Benefits | |
| Other Offsets related to Earnings | |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | ($2,196,828.00) |
| | |
| **Calculated Lost Earnings and Benefits after Offsets** | ($194,102.00) |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $389,971.00 |
| Burial Costs | $16,881.00 |
| **Total Other Economic Losses** | $406,852.00 |
| | |
| **Total Economic Loss** | $406,852.00 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $200,000.00 |
| **Total Non-Economic Loss** | $450,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ($255.00) |
| Life Insurance | ($188,701.37) |
| Other Offsets | |
| **Total Additional Offsets** | ($188,956.37) |
| | |
| **Subtotal Award for Deceased Claim** | $667,895.63 |



September 11th
Victim Compensation Fund

| | |
|---|---|
| **Subtotal of Personal Injury and Deceased Claims** | $917,895.63 |
| PSOB Offset | ($315,746.00) |
| Prior Lawsuit Settlement Offset | ($268,998.55) |
| **TOTAL AWARD** | $333,151.08 |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | $84,190.74 |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | |

| |
|---|
| **Eligible Conditions Considered in Award** |
| Metastatic Colorectal Cancer |

# Family Member Affidavits

Jennifer McNamara

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

In Re:

TERRORIST ATTACKS ON                           03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------- X       **AFFIDAVIT OF**
EVELYN BETSO, et al.,                                            **JENNIFER MCNAMARA**


                                   Plaintiffs,        21-CV-01394 (GBD)(SN)


              V.

ISLAMIC REPUBLIC OF IRAN,

                                   Defendant.
--------------------------------------------------------------X

STATE OF NEW YORK       )
                        : SS
COUNTY OF SUFFOLK       )


        Jennifer McNamara, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
13 Homan Avenue, Blue Point, New York 11715.

        2.      I am currently 55 years old, having been born on November 12, 1967.

        3.      I am the wife of Decedent, John F. McNamara upon whose death my claims
are based, I submit this Affidavit in support of the present motion for a default judgment
for the claim made on behalf of my husband's estate and for my solatium claim. On
January 19, 2010, I was issued Letters Testamentary as Executor of my husband's estate
by the Suffolk County Surrogate's Court.

        4.      My husband passed away from colon cancer on August 9, 2009, at the age of 44.
It was medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.       John and I met in September 2000, got engaged in March 2001 and married in 2002. It was love at first sight. From the moment he walked down the block for our blind date, I knew he was the name I would marry. John was a New York City Firefighter, a job that he loved and excelled at. From the day we met, John and I did many things together – spent time with family and friends, went to parties, restaurants in the neighborhood, street fairs when we still lived in Brooklyn and all the normal things couples do. John was incredibly helpful to me in taking care of my elderly grandmothers and quickly became a grandson to them. John was the most ridiculous person I ever met – there were few times he could not make me laugh or at least smile (even when he was sick). We tried for a number of years to have a child; all John ever wanted was to be a dad. We finally found out we were going to have a child and just a few months later John was diagnosed with Stage 4 colon cancer. John only lived for a few years, dying when our son Jack was two. However, he made the best of those few years and relished every moment of being a dad. The memories of John spending time with Jack, strolling him around the neighborhood, sitting him on his lap to spray the firehouse and so many others are what has gotten both my son and I through the last 14 years of missing the most important person in our lives.

6.       John responded as an active-duty firefighter on September 11th and worked for over 500 hours with FDNY digging in the rubble. On day one he was not working so was recalled. He raced into the firehouse and ended up staying at the foot of the Brooklyn Bridge with the rest of his company in a bus commandeered by the senior man. Once they entered the WTC area, they searched for people and tried to find water and other resources. From what I recall, day one was absolute chaos.

7.       John was sitting in the firehouse on an ordinary day eating chicken salad when suddenly he felt terribly ill. John had never left in the middle of a tour before, but that day he did.

He came right back to our house on Long Island and went to the doctor. She did a sonogram, saw a mass in his colon and immediately arranged for a colonoscopy. She asked to see me and John in her office that day after I was done with work. She told us what the sonogram showed and advised us to get the best oncologist on board that we could – she suspected it was cancer. We went home and cried. I was four months pregnant at the time. What should have been the best time of our lives was now the worst. We had the colonoscopy the next day and even before the biopsies came back, they suggested we get into an oncologist. We were lucky to get into Sloan and as we stood waiting to see the oncologist their John got the call that the biopsies were positive; he had Stage 4 colon cancer that had metastasized to the liver and stomach. John began chemo almost immediately, something he did every two weeks through the years of his illness. John's first ten plus hour surgery was just a few weeks after our son was born. He received chemotherapy every two weeks which often made him violently ill requiring us to head back into New York City from our home in Long Island; sometimes in the middle of the night. He had a pump implanted to deliver chemo directly to his liver and a port to cut down on how often they had to stick him with needles. John has numerous surgeries and hospital stays. He had varices in his stomach at one time and was rushed to the ICU wherein he was given last rites twice. He had a heart attack after one of his surgeries which required moving him across the street to Cornell. He endured radiation treatment and at the end, more pain meds than one person should ever have to take. In the end, his blood pressure tanked, he could not make it to the city to go to Sloan and was in the ICU at our local hospital for three weeks until he died on August 9, 2009, at the age of 44.

8.      John was my life; he was my future and my son's future. When he was diagnosed, nothing else mattered except supporting him, getting him better and raising our son. I was a litigation attorney at the time and my entire life was changed. I now had to juggle a full-time job, a

baby, and a sick husband. My dreams for the future were shattered. As much as we had hoped that John would be cured, in the end he was not. I was left a widow at the age of 42 and my son left without a father at the age of two. Every aspect of our lives has changed as a result. In the midst of unimaginable grief, I had to figure how to move forward. How to raise a son without a father, take care of a home myself and figure out how we would support ourselves. My dreams of having additional children, traveling and John coaching Jack at baseball has to be thrown away and I had to reimagine our entire lives. For Jack it was even more difficult. At the age of two he had to start realizing what it meant for someone to be dead. He had to learn that it meant no airplane rides to the sky or ladders built to the clouds would allow him to see his father again; a father he does not remember. He has had to reconcile himself to the fact that he does not know how his father smelled, what it felt like to hold his hand and want it was like to have dad toss him a baseball instead of mom. He has had to explain over and over to other kids that dad doesn't show up to school plays, graduations, and sporting events because he is dead, not because he works too hard. As he grows up, the absence of his father is more apparent to both of us. I am not able to give a 16-year-old boy advice and guidance like his father would have. Jack does not have a man to look to as a role model or someone he can talk to about girls and relationships. While our lives have changed dramatically without John, without a doubt our hearts are richer having had known him.

JENNIFER MCNAMARA

Sworn before me this

24 day of August, 2023

Mary E. Barbone

Notary public