# EXHIBIT AA

# Estate of Walter Torres

# VCF Documentation




October 29, 2018

NAKIA TORRES
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY 10271

Dear NAKIA TORRES:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form. You submitted an Eligibility Form on behalf of WALTER TORRES. Your claim number is VCF0075532. Your Eligibility Form was determined to be substantially complete on October 26, 2018. As stated in the Regulations and on the claim form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors. Injuries that were found eligible by the first iteration of the September 11th Victim Compensation Fund that operated from 2001 to 2004 ("VCF1")

**<u>The Decision on your Claim</u>**

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations. Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- ASTHMA, UNSPECIFIED, UNSPECIFIED STATUS
- MALIGNANT NEOPLASM OF THE LIVER AND HEPATIC DUCTS
- Injuries that were found eligible by the first iteration of the September 11th Victim Compensation Fund that operated from 2001 to 2004 ("VCF1")

Although the decedent's VCF1 injuries are again eligible under the current VCF, it does not necessarily mean that you are entitled to receive additional compensation. Because you were previously compensated by VCF1 for some or all of these injuries, you must show that the condition has worsened, that you have been certified for treatment by the WTC Health Program for a new condition, or that you have a new loss associated with a previously eligible condition. For example, if the decedent had been determined to be disabled from these conditions since receiving the VCF1 award and that award did not include future lost earnings, you may be eligible for that loss now.

Note that the amount of compensation received in VCF1 will be considered when determining whether additional compensation should be awarded. As a general rule, the compensation received in VCF2 will be calculated based on the amount of compensation any similarly situated person who filed a claim only in VCF2 would receive; any compensation received in VCF1 will




then be applied as an adjustment to the award. For more information regarding the ability to participate in the VCF after submitting a claim in VCF1, please see the www.vcf.gov website.

Please note that there are several reasons why an injury that you think should be eligible is not listed above. For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or loss calculation.

**What Happens Next**

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim. Please see the VCF website for details on how to amend your claim. The VCF will review the new information and determine if it provides the basis for a revised decision.

**If the decedent does not have injuries other than those listed above** you should submit your Compensation Form and required supporting materials. If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information. The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: NAKIA TORRES




December 14, 2018

NAKIA TORRES
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY 10271

Dear NAKIA TORRES:

The September 11th Victim Compensation Fund ("VCF") has reviewed your claim for compensation. Your claim number is VCF0075532. Your Compensation Form was determined to be substantially complete on November 23, 2018. This means your claim was deemed "filed" for purposes of section 405(b)(3) of the Statute on that date.

Based on the information you submitted, the VCF has calculated the amount of your eligible loss as $[REDACTED]. This determination is in accordance with the requirements of the Reauthorized Zadroga Act. The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions included in this determination.

In making this determination, the VCF considered the $[REDACTED] award your father received from the first VCF ("VCF1"), as well as the newly verified conditions. The calculation of your current award takes into account your father's VCF1 non-economic loss award of $[REDACTED].

Loss of earnings was not awarded because both the FDNY and the Social Security Administration determined that your father was disabled by injuries that are not related to his VCF eligible conditions. Additionally, your father was not working at the time of his death and there is no basis for the VCF to conclude that your father would have returned to the workforce but for his death. Therefore, your father's survivors did not suffer a compensable earnings loss due to his death.

The VCF awarded replacement services to compensate Gina Torres for the loss of your father's assistance with cooking meals. The award does not include compensation for outdoor chores or home maintenance because the loss of these services was fully compensated in your father's VCF1 claim.

No non-routine legal service expenses are approved for reimbursement for this claim.

As the Personal Representative, you are required to distribute any payment received from the VCF on behalf of the victim to the eligible survivors or other recipients in accordance with the applicable state law or any applicable ruling made by a court of competent jurisdiction or as provided by the Special Master.

**<u>What Happens Next</u>**

The VCF will deem this award to be final and will begin processing the payment on your




claim unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below. If you do not appeal, the Special Master will authorize the payment on your claim within 20 days of the end of the 30-day appeal period. Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the bank account designated on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.

- **Appealing the Award**: You may request a hearing before the Special Master or her designee if you believe the amount of your award was erroneously calculated or if you believe you can demonstrate extraordinary circumstances indicating that the award does not adequately address your claim. **If you choose to appeal, your payment will not be processed until your appeal has been decided**.

To request a hearing, you must complete and return the enclosed Compensation Appeal Request Form **and** Pre-Hearing Questionnaire no later than **30 calendar days** from the date of this letter. The VCF will notify you in writing of your scheduled hearing date and time and will provide additional instructions to prepare for your hearing. If both forms are not submitted with complete information within 30 days, you have waived your right to appeal and we will begin processing your payment.

- **Amending your Claim**: You may amend your claim in the future if your circumstances change and you have new information to provide to the VCF. For example, you may amend if the WTC Health Program certifies additional physical conditions for treatment, if you have information in support of your claim that was not submitted to the VCF when your award was determined and that you believe would affect the amount of your award, or if you have incurred additional economic loss due to an eligible condition. The VCF will review the new information and determine if it provides the basis for a revised decision. Please see the VCF website for additional details on how to amend your claim and the specific circumstances that may be appropriate to request an amendment.

- **Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award. If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment. If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award. If you need to notify the VCF of a new collateral source payment, please complete the “Collateral Offset Update Form” found under “Forms and Resources” on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the Reauthorized Zadroga Act. As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.




If you have any questions, please call our toll-free Helpline at 1-855-885-1555. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: NAKIA TORRES




# Award Detail

Claim Number: VCF0075532
Decedent Name: WALTER TORRES

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| | |
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $0.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $0.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | $0.00 |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | $[redacted] |
| | |
| **Subtotal Award for Personal Injury Claim** | $[redacted] |




| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| | |
| **Loss of Earnings including Benefits and Pension** | |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | |
| SSA Survivor Benefits | |
| Worker's Compensation Death Benefits | |
| Other Offsets related to Earnings | |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $[REDACTED] |
| Burial Costs | $[REDACTED] |
| **Total Other Economic Losses** | $[REDACTED] |
| | |
| **Total Economic Loss** | $[REDACTED] |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $[REDACTED] |
| Non-Economic Loss - Spouse/Dependent(s) | $[REDACTED] |
| **Total Non-Economic Loss** | $[REDACTED] |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ($[REDACTED]) |
| Life Insurance | ($[REDACTED]) |
| Other Offsets | $0.00 |
| **Total Additional Offsets** | ($[REDACTED]) |
| | |
| **Subtotal Award for Deceased Claim** | $[REDACTED] |




| **Subtotal of Personal Injury and Deceased Claims** | **$[redacted]** |
|---|---|
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| Previously Paid Personal Injury Award | $0.00 |
| **TOTAL AWARD** | **$[redacted]** |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | |

| **Eligible Conditions Considered in Award** |
|---|
| Asthma, Unspecified, Unspecified Status |
| Malignant Neoplasm of The Liver and Hepatic Ducts |
| VCF1 Eligible Condition |

# Family Member Affidavits

# Nakia Torres

TED STATES DISTRICT COURT
JTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON SEPTEMBER 11, 2001

03-MDL-1570 (GBD)(SN)

---------------------------------------------------------------- X

EVELYN BETSO, et al.,

Plaintiffs.

**AFFIDAVIT OF NAKIA TORRES**

21-CV-01394 (GBD)(SN)

V.

ISLAMIC REPUBLIC OF IRAN.

Defendant.

---------------------------------------------------------------- X

STATE OF NEW YORK )
: SS
COUNTY OF QUEENS )

NAKIA TORRES, being duly sworn, deposes and says:

1. I am a plaintiff in the within action, am over 18 years of age, and reside at [redacted].

2. I am currently 48 years old, having been born on [redacted].

3. I am the daughter of Decedent, Walter Torres, upon whose death my claim is based. I submit this Affidavit in support of the present motion for a default money judgment for the claim made on behalf of my father's estate and for my solatium claim. On December 5, 2014, I was issued Letters of Administration as Administrator of my father's estate by Queens County Surrogate's Court.

4. My father passed away from Malignant Neoplasm of the liver and hepatic ducts on December 18, 2012, at the age of 62. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5. My father was a FDNY Firefighter who encouraged me to become an NYPD officer in 1998. My father was a family oriented, generous, and amusing man. He would often use his engaging personality to tell stories amongst family and friends at gatherings or on our family vacations to California and Hawaii. My father made sure we would have weekly dinners as a family regardless of our busy schedules. He loved salsa music and we used to attend the Hispanic Society's dinner dances every year. We used to laugh about him always being the first person up to salsa dance that would turn into a break dance. The crowd go wild and cheer him on when my dad ends up on the floor doing back spins. I recall Halloween being one of his favorite days since he enjoyed dressing up for Halloween parties. He would spend a lot of time paying attention to details to fully execute his costume. I will never forget the one year that he dressed up as a pirate with a hooked hand and face makeup to match. My father had a fighting spirit, and he was sure to instill the same spirit in me by motivating me to never give up, voice my opinion when needed, treat people how I want to be treated and to respect others as much as I expect to receive the same respect. These values still have a lasting impression on me today and have meant more to me since his passing.

6. On 9/11, my father was a FDNY Firefighter. I recall my father racing to the site where the World Trade Center once stood to immediately assist in rescue and recovery operations. At the time, I was a NYPD police officer, and I too was mobilized to assist with the attacks as well. On the morning of the attack, we spoke briefly checking on each other. We were unable to speak again until days later due to poor cellphone connections and increased hours that we both worked for many weeks after the September 11th attacks.

7. My father had always been an energetic and independent person, so it had been very apparent when his health had begun to deteriorate. During the month of October 2012, I witnessed my father initially being able to drive himself to his desired destinations and also assisted others during the aftermath of Hurricane Sandy after losing his own home and valuables to barely being able to get out of his bed and walk on his own by early November due to pain and inflammation from his swollen stomach and ankles. My father now needed a cane which made him quite miserable. My father's inability to ambulate on his own and constant pain took a toll on his personality and prevented him from doing normal activities. My father had become more reclusive, which led him to stay home and not communicate with his loved ones as he once did. The pain and discomfort caused my father to lose his appetite and ability to sleep which made him belligerent. By the end of November, I remember my father being less responsive and became resistant to going to the hospital due to prior inconclusive testing. However, I finally was able to convince him to go to Veterans' Hospital in Fort Hamilton, New York. Once arriving at the VA Hospital, doctors ran multiple tests on my father again and quickly diagnosed him with Stage 4 Terminal Cancer. There was nothing that could be done, except keep my father in hospice care until he succumbed to his illness. Within the next two weeks, I watched as my father became disoriented and then unresponsive by the beginning of December when he passed away.

8. My father's death has left a void in my life that is impossible to fill. My father's death was unfair because my father was certainly not an old man at the age of 62 and would have had much more life in him had he not developed cancer. Within what was my father's last days, I was able to give him the news that I would be starting a family of my own. Initially after receiving the news of my own pregnancy, I hoped that with my father being retired by this time, he would have the opportunity to meet his grandson and form a bond of his own with him. His grandson,

Dylan, whose personality often reminds me of my father as well, will never have the experience of going to baseball games or trips to upstate New York for camping as my father took me on as a child because of my father's passing. During my entire pregnancy, I dealt with emotions from the loss of my father and anticipating how much he will miss future pivotal moments in my life including walking me down the aisle. I miss my father to my core and that will never change.

Nakia Torres

NAKIA TORRES

Sworn before me this
27 day of July, 2023

P. Patel
Notary public

PAYAL P PATEL
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PA6402875
Qualified in Queens County
My Commission Expires 01-13-2024