# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03-MDL-1570 (GBD)(SN)<br><br>ECF Case |
|---|---|

This document relates to:

*Accardi v. Islamic Republic of Iran, No. 21-cv-06247 (GBD)(SN)*
*Alexander v. Islamic Republic of Iran, No. 21-cv-03505 (GBD)(SN)*
*Betso v. Islamic Republic of Iran, No. 21-cv-01394 (GBD)(SN)*

### PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S
### FEBRUARY 28, 2025, REPORT & RECOMMENDATION (ECF 10755)

Nicholas Papain, Esq.
Sullivan Papain Block McManus
Coffinas & Cannavo P.C.
120 Broadway, 27th Floor
New York, NY 10271
Phone: (212) 732-9000
npapain@triallaw1.com
COUNSEL FOR PLAINTIFFS IN THE *ACCARDI, ALEXANDER,* AND *BETSO* ACTIONS

March 24, 2025

I. **Introduction**

On May 7, 2024, the undersigned filed three (3) motions on behalf of the following

Plaintiffs in the above-referenced *Accardi, Alexander* and *Betso* actions:

(i)     the Personal Representatives of the estates of seventy-nine (79) individuals, who developed severe and ultimately fatal medical conditions ("Latent Injury Decedents") as a direct result of the 9/11 Terrorist Attacks ("9/11-Related Injuries"), seeking to hold the defendant Islamic Republic of Iran ("Iran" or "Defendant") liable for the pain and suffering and deaths of the Latent Injury Decedents; and

(ii)    two hundred (200) Surviving Family Members of Latent Injury Decedents, who seek to hold Iran liable for their resultant solatium injuries; and

(iii)   the Personal Representative of a Decedent killed on 9/11 in the Terrorist Attacks, who seeks to hold Iran liable for the 9/11 Decedent's pain and suffering and death; and

(iv)    the spouse of said 9/11 Decedent, who seeks to hold Iran liable for her resultant solatium injuries.

On February 28, 2025, Magistrate Judge Sarah Netburn issued a Report & Recommendation, which recommended:

> "GRANTING the motions for partial default judgment brought on behalf of the Latent Injury Decedents and DENYING the motions for partial default judgment brought by Surviving Family Members. See ECF Nos. 9766, 9770, 9776. The Court also recommends GRANTING the motion for partial default judgment brought on behalf of 9/11 decedent Gene Maloy. See ECF No. 9776." Feb. 28, 2025, R&R, ECF No. 10755 at *17[1].

On March 6, 2025, Magistrate Judge Netburn issued an Order amending the exhibits

attached to the Court's Report & Recommendation, ECF No. 10755, to "*include $12.5 million in*

*solatium damages for Plaintiff Margaret Randazzo-Maloy, the spouse of 9/11 decedent Gene*

*Maloy*" (italics added), and to correct the spelling of the surnames of Personal Representative

Sandra Heffernan and of Latent Injury Decedent Charles Williams.  Mar. 6, 2025, Order, ECF No.

10769.

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

Plaintiffs' counsel respectfully objects to the Magistrate Judge's Report and Recommendation, as amended, only insofar as it recommended denial of the motions by the Surviving Family Members of the Latent Injury Decedents.  As set forth in detail below, it is respectfully submitted that the emotional harm suffered by the Surviving Family Members whose parents, spouses, children and siblings were killed *in consequence of 9/11* was surely just as predictable as the emotional harm suffered by the families who lost loved ones on 9/11.

## II.    Specific Relief Sought by Plaintiffs in the *Accardi, Alexander* and *Betso* motions

Plaintiffs' motions specifically seek the following relief, pursuant to 28 U.S.C. §1605A:

(1) judgment by default on liability against Iran and in favor of the Personal Representatives of the estates of the Latent Injury Decedents, and awarding each of their estates $7 million in damages for the Latent Injury Decedents' pain and suffering; and

(2) judgment by default on liability against Iran and in favor of Plaintiff, Margaret Randazzo-Maloy, as Personal Representative of the estate of Gene Maloy, who was killed on 9/11 in the Attack ("9/11 Decedent"), and awarding said estate $2 million in damages for said 9/11 Decedent's pain and suffering; and

(3) judgment by default on liability against Iran and in favor of Plaintiff, Margaret Randazzo-Maloy, as the spouse of 9/11 Decedent, Gene Maloy, and awarding Plaintiff Margaret Randazzo-Maloy $12.5 million in solatium damages; and

(4) judgment by default on liability against Iran and in favor of each of the Surviving Family Members of the Latent Injury Decedents, and awarding them solatium damages in the amounts set forth in the exhibits attached to the motions; and

(5) interest of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of judgment; and

(6) permitting Plaintiffs to submit further applications for damages, including punitive and economic damages, consistent with any future rulings of the Court.

## III.    Personal Jurisdiction and Default

Plaintiffs' counsel respectfully submits that Magistrate Judge Netburn correctly found that Plaintiffs had properly served Iran under Foreign Sovereign Immunities Act ("FSIA"), Feb. 28, 2025, R&R, ECF No. 10755 at 5-6*, and that Iran had defaulted, Id. at *6.

IV.    <u>Liability</u>[2]

As stated by Magistrate Judge Netburn, there are six elements needed to establish liability:

> "Section 1605A(c) provides a cause of action for claims (1) brought by a United States national or her representative (2) against a designated state sponsor of terrorism that (3) directly…provided material support or resources for (4) 'an…extrajudicial killing…that (5) caused (6) personal injury or death. [footnote omitted] 28 U.S.C. § 1605A(a)(1), (c)." <u>Id.</u> at *6.

The Magistrate Judge found that "*Plaintiffs' claims easily meet five of these six elements*" [italics added] <u>Id.</u> at *7, specifically:

> "First, the relevant plaintiffs or victims were all United States citizens on September 11, 2001... Second, Iran has been a designated state sponsor of terrorism since 1984... Third, as the Court previously found, Iran 'provided direct support to al Qaeda specifically for the [9/11 Attacks].' …Fourth, 'the 9/11 attacks and the resulting deaths constitute 'extrajudicial killings.' ... As to the sixth element, the Latent Injury Decedents suffered injury and death, while their Surviving Family Members suffered emotional distress…" [all citations omitted] <u>Id.</u>

Thus, the Magistrate Judge stated that:

> "*The only question is whether the Plaintiffs can show causation under § 1605A(c).* Courts interpret § 1605A(c) causation using 'well-established principles of law, such as those found in [the] Restatement (Second) of Torts and other leading treatises.' <u>Bodoff v. Islamic Republic of Iran</u>, 907 F. Supp. 2d 93, 103 (D.D.C. 2012) (cleaned up). *Those principles require plaintiffs to demonstrate 'proximate cause,'* <u>Roberts</u>, 581 F. Supp. 3d at 170, a characteristically opaque term for 'scope of liability,' Restatement (Third) of Torts: Liab. for Physical & Emotional Harm 6 Special Note (2010). (italics added) Feb. 28, 2025, R&R, ECF No. 10755 at *7-8.

V.    **<u>Latent Injury Decedents</u>**

In recommending granting the Latent Injury Decedents' motions, Magistrate Judge Netburn aptly noted that the "*Court has previously held that Iran proximately caused the latent injuries and resultant deaths that flowed from the 9/11 Attacks. See Latent Injury I R&R; Latent*

---

[2] The Court found that proof of liability established subject matter jurisdiction. <u>See</u> Feb. 28, 2025, R&R, ECF No. 10755 at *5.

*Injury I Opinion*."[3] (italics added) Id. at *8. There, the Magistrate Judge noted, the Court found that plaintiffs had established (1)   through letters issued by the September 11th Victim Compensation Fund ("VCF") that the latent injury decedents' injuries were a "direct result" of the 9/11 Attack, and had proven (2) through affidavits from decedents' surviving family members that the Attack "was a substantial factor" leading to the latent injury decedents' medical conditions and deaths.  Feb. 28, 2025, R&R, ECF No. 10755 at *8.

In reference to the Court's prior ruling, Magistrate Judge Netburn further noted that:

> "Because 'Iran's material support for al Qaeda proximately caused the 9/11 Attacks and the resulting deaths,' the Court reasoned, the plaintiffs' latent injury deaths were 'necessarily' reasonably foreseeable. Latent Injury I R&R, at *6 (citing Havlish I, 2011 WL 13244047, at *41). Accordingly, the Court found that Iran had proximately caused the latent injury plaintiffs' injuries and deaths. See Latent Injury I R&R, at *5–6." Feb. 28, 2025, R&R, ECF No. 10755 at *9.

In the case at bar, Magistrate Judge Netburn found that Plaintiffs have presented the same type of evidence, and more, in establishing proximate cause:

> "*The Latent Injury Decedents who bring these motions have similarly demonstrated that Iran's tortious conduct was a 'substantial factor' that led to their deaths and that their deaths were a 'reasonably foreseeable' consequence of Iran's actions*. Owens, 864 F.3d at 794. First, each decedent's estate has furnished the Court with VCF letters confirming that their injuries were a 'direct result' of the 9/11 Attacks. See ECF Nos. 9768, 9773, 9778. Each Decedent has buttressed that documentation with moving affidavits from Surviving Family Members detailing the Decedents' pain and suffering and confirming that the Decedents died of their 9/11-related latent injuries. See id. *Most Decedents have even gone further than previous latent injury plaintiffs—by providing "Award Detail" letters that demonstrate that they each received an award for both a 'personal injury claim' and a 'deceased claim' from the VCF*. [footnote omitted] See id. Crediting these VCF letters and the Surviving Family Members' affidavits once again, *'the evidence establishes that Iran's conduct was a substantial factor leading to the Latent Injury Decedents' deaths*.' Latent Injury I R&R, at *6.

---

[3] The citation for "Latent Injury I R&R" is In re Terrorist Attacks on Sept. 11, 2001 ("In re 9/11"), No. 03-md-01570 (GBD)(SN), 2023 WL 2529061 (S.D.N.Y. Mar. 3, 2023), and the citation for "Latent Injury I Opinion", which adopted, in full, Latent Injury I R&R, is 2023 WL 5109691 (Aug. 9, 2023).

Second, *because 'Iran's material support for al Qaeda proximately caused the 9/11 Attacks and the resulting deaths,' the moving Latent Injury Decedents' deaths—just like the deaths of previous latent injury plaintiffs— were 'necessarily' reasonably foreseeable*. See Latent Injury I R&R, at *6 (citing Havlish I, 2011 WL 13244047, at *41). The Latent Injury Decedents' claims therefore pass both the "substantial factor" and "reasonable foreseeability" tests. Owens, 864 F.3d at 797.

*Accordingly, Iran proximately caused the Latent Injury Decedents' injuries and deaths*. It follows that the Court has subject matter jurisdiction under § 1605A(a) and personal jurisdiction over Iran, and that Iran is liable to the Latent Injury Decedents under § 1605A(c). The Court therefore recommends granting the Latent Injury Decedents' motions for default judgment." (italics added) Feb. 28, 2025, R&R, ECF No. 10755 at *9-10.

Regarding damages sought on their behalf, the Magistrate Judge stated:

"The Latent Injury Decedents all seek a baseline $7 million award for their 9/11-related medical conditions and resultant deaths. See ECF Nos. 9767 at 17; 9771 at 17–18; 9777 at 18. The Court recommends following the standard it has set and awarding each Latent Injury Decedent $7 million in pain and suffering damages." Feb. 28, 2025, R&R, ECF No. 10755 at *16.

It is respectfully requested that this Court adopt Magistrate Judge Netburn's recommendations and grant the Latent Injury Decedents' motions.

## VI.    9/11 Decedent Gene Maloy and Surviving Spouse, Margaret Randazzo-Maloy

Regarding the claims for 9/11 Decedent, Gene Maloy, and those of his spouse, Margaret Randazzo-Maloy, the Magistrate Judge stated:

"Gene Maloy's estate seeks $2 million in pain and suffering damages on his behalf, while his spouse seeks $12.5 million in solatium damages. See ECF No. 9777 at 12, 20. *As the Court's ruling in Havlish I makes clear, Iran 'caused' Mr. Maloy's 'death.'* 28 U.S.C. § 1605A(c). Iran is therefore liable to him. The Court recommends awarding his estate $2 million in pain and suffering damages and his spouse $12.5 million in solatium damages." (italics added) Feb. 28, 2025, R&R, ECF No. 10755 at *16.

Again, it is respectfully requested that the Court adopt Magistrate Judge Netburn's recommendations and grant the motions of the estate of said 9/11 Decedent and his spouse.

## VII.    Prejudgment Interest and Future Applications for Damages

Magistrate Judge Netburn also recommended "awarding prejudgment interest of 4.96

6

percent per annum, compounded annually for the period from September 11, 2001, until the date

of judgment" and "permitting the listed plaintiffs to submit further applications for damages,

including punitive and economic damages, consistent with any future rulings of the Court."[4] Id.

at 17.

Such is, of course, wholly consistent with this Court's prior holding in Latent Injury I R&R

adopted by Latent Injury I Opinion, and with other previous orders issued by this Court in this

muti-district litigation, and therefore, it is respectfully requested that the Court adopt the

Magistrate Judge's recommendations.

## VIII.   Surviving Family Members of Latent Injury Decedents

Magistrate Judge Netburn recommended that the motions of the Surviving Family

Members of the Latent Injury Decedents be denied because:

> "[T]he chain of causation connecting Iran's actions to the Surviving Family
> Members' harms 'is far too long to constitute proximate cause.' Latent
> Injury I R&R, at *8 (quoting MF Global Holdings Ltd. v.
> PricewaterhouseCoopers LLP, 43 F. Supp. 3d 309, 314 (S.D.N.Y. 2014)
> (cleaned up))." [footnote omitted]
>        Therefore, while the Court recognizes the Surviving Family
> Members' continued pain and suffering, its analysis remains unchanged.
> The Court cannot find that the Surviving Family Members have established
> proximate cause and, to 'cabin an otherwise indefinite scope of liability,'
> recommends denying their claims. Latent Injury I Opinion, at *3." (italics
> added) Feb. 28, 2025, R&R, ECF No. 10755 at *15.

In so finding, the Magistrate Judge followed the Court's holding in Latent Injury I R&R

adopted by Latent Injury I Opinion, where the Court had similarly held that the connection between

the surviving family members' emotional injuries and Iran's tortious conduct "was too attenuated

to support liability. See Latent Injury I R&R, at *7–8; Latent Injury I Opinion, at *2." (italics

added) Feb. 28, 2025, R&R, ECF No. 10755 at *11.

---

[4] The "listed plaintiffs" refers to those listed in the exhibits to the R&R which, as noted, were amended.

As argued below, Plaintiffs respectfully object to the Magistrate Judge's recommendation, and respectfully request that the Court grant the motions of the Surviving Family Members.

IX.   **Objections to the Denial of the Motions of Surviving Family Members of Latent Injury Decedents**

At the outset, it is important to note, again, that Magistrate Judge Netburn concluded that the claims brought on behalf of the Latent Injury Decedents "easily" satisfied five of the six elements prerequisite for FSIA liability, Id. at *7, and that, on close examination, the claims also satisfied the sixth, causation element, Id. at *7-10.  In reaching the latter determination, the Magistrate Judge expressly found (1) "Iran's tortious conduct was a 'substantial factor' that led to their [the Latent Injury Decedents] deaths", Id. at *8, and (2) "their deaths were a 'reasonably foreseeable' consequence of Iran's actions" Id.

The Magistrate Judge further observed that the Latent Injury Decedents had "even gone further than previous latent injury plaintiffs—by providing 'Award Detail' letters that demonstrate that they each received an award for both a 'personal injury claim' and a 'deceased claim' from the VCF" Id. at *9.  The Magistrate Judge even added that "because 'Iran's material support for al Qaeda proximately caused the 9/11 Attacks and the resulting deaths,' the moving Latent Injury Decedents' deaths—just like the deaths of previous latent injury plaintiffs— were 'necessarily' reasonably foreseeable" Id. at *10.

Yet, after finding all of the above and therefore recommending that a default judgment be entered in the Latent Injury Decedents' favor, the Magistrate Judge then concluded that their Surviving Family Members should be denied any recovery at all for solatium damages on the ground that the emotional harm they suffered in consequence of the admittedly foreseeable deaths of their immediate family member was itself not reasonably foreseeable and/or not proximately caused by Iran's intentionally tortious conduct Id. at *10-15.

It is respectfully submitted that this is doubly anomalous in that,

a)  even though the immediate family members of those killed *on 9/11* could and did recover damages, and even though the emotional harm of the families whose parents, spouses, children and siblings were killed *in consequence of 9/11* was surely just as predictable as the emotional harm of the families who lost loved ones on 9/11, these plaintiffs would be denied recovery because the emotional injury was more "remote," and,

b)  even though it *was* reasonably foreseeable that Iran's conduct could injure or kill the Latent Injury Decedents, it was *not* sufficiently foreseeable that the deaths of the Latent Injury Decedents would necessarily cause injury to the Latent Injury Decedents' parents, spouses, children and siblings.

Of course, this Court, and Magistrate Judge Netburn had, as noted above, previously denied solatium damages to surviving family members of other latent injury decedents. See Latent Injury I R&R, at *7–8; Latent Injury I Opinion, at *2.  And the two reasons Magistrate Judge Netburn gave for denial of solatium damages to the Surviving Family Members of the Latent Injury Decedents in the cases now before the Court, were essentially the same reasons that the Magistrate Judge, and this Court, previously gave for denial of solatium damages to surviving family members of other latent injury decedents:

(1)  the stated concern "that authorizing claims for surviving family members of latent injury decedents could create 'a potentially unlimited class' that could 'remain open for decades after a terrorist attack'" Feb. 28, 2025, R&R, ECF No. 10755 at *12; and,

(2)  the perception that "the causal chain" from the wrongful conduct to the losses sustained by the Surviving Family Members was just "too long" Id. at *15.

9

Plaintiffs' counsel herein are under no illusions. This Court denied solatium damages to previous surviving family members of latent injury decedents and the expected ruling is therefore that it will do so again here. That said, the Surviving Family Members respectfully submit that there are cogent points that were not asserted in the past that may, and we believe should, cause the Court to consider the issue in a fresh light.

_First_, with respect to the concern that the contrary result "could create 'a potential unlimited class' that could 'remain open for decades after a terrorist attack,'" the concern is understandable … yet also, Plaintiffs' counsel respectfully submits, unwarranted in two respects.

For one thing, the sole reason the class "could 'remain open for decades'" is that victims will continue to die in consequence of the 9/11 terrorist attack. The Court would surely not deny a future Latent Injury Decedent compensation on the grounds that he or she took too long to die (and suffered too long).

Further, the class of surviving family members is not an "unlimited" class. The class, which is strictly limited to "immediate family members", will necessarily contract over time because, as time goes on, there will be more and more immediate family members who will not be able to assert claims for the simple reason that they will have pre-deceased the latent injury decedent and therefore will no longer be "surviving" family members.

_Second_, in concluding that the claims brought by prior surviving family member plaintiffs were not reasonably foreseeable, it is respectfully requested that the Court revisit how very foreseeable these injuries truly were.

In 2019, the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act was enacted, extending the authorization for the VCF to the year 2090. In its July 12, 2019 report on the bill,

the Judiciary Committee of the U.S. House of Representatives, H. Rept. 116-152 at

www.congress.gov/congressional-report/116th-congress/house-report/152, described the sheer

magnitude of the Terrorist Attack's environmental assault on lower Manhattan, which caused the

latent injury deaths here in issue, as follows:

> "Beyond the devastating loss of life, the collapse of the WTC towers and the adjacent buildings released numerous hazardous substances into the environment. These hazardous substances included hundreds of tons of asbestos, nearly half a million pounds of lead, and untold amounts of glass fibers, steel, and concrete. The substances formed into a massive cloud of toxic dust and smoke which blanketed parts of New York City and New Jersey and was blown or dispersed into many of the surrounding office buildings, schools, and residences. In addition to the debris, fires burned for many months, partly due to the 150,000 gallons of oil stored in the buildings, which emitted particulate matter, various heavy metals, and other potentially deadly substances. All told, the building collapses dumped about one million tons of dust on the area around Lower Manhattan, creating a 16-acre disaster zone. It is estimated that approximately 400,000 people, including 'rescue and recovery workers, residents, students and school staff, building occupants, and passersby,' were exposed to 'the immense cloud of dust and debris, the indoor dust, the fumes from persistent fires, and the mental trauma' of the WTC's collapse. [footnote 6 omitted]
>
> The Natural Resources Defense Council, in its report on the environmental impact of the WTC collapse, stated that the simultaneous release of thousands of toxic components constituted a 'pollution event' and called it '*an unprecedented environmental assault for Lower Manhattan*.' [footnote 7 omitted]' (italics added) H. Rept. 116-152 at *3.

To the extent the issue turns on foreseeability, it would be wholly unforeseeable that such

conditions in the heart of downtown Manhattan *would not* cause many to develop severe medical

conditions that were fatal. It is equally unforeseeable that such deaths *would not* cause grievous

emotional harm to the victims' children, spouses, parents and siblings.

It bears noting that the House Report also described the scope and severity of the health

impact on those who were exposed to this "environmental assault", Id., as follows:

> "Ongoing medical monitoring and related studies of groups of people exposed to WTC toxins have yielded very troubling health statistics on illnesses related to such exposure. Within a few years of 9/11, these studies

connected exposure to myriad severe symptoms, including respiratory diseases presenting as asthma or asthma-like conditions, pulmonary fibrosis, and significant loss of lung function…upper respiratory conditions, including chronic sinusitis; and gastrointestinal problems. These medical problems have been documented in peer-reviewed scientific publications of research studies done by several independent research groups." Id. at *5.

\*    \*    \*

"A decade after the 9/11 attacks, responders and survivors began suffering from a second, more severe wave of adverse health effects among populations exposed to 9/11 toxins. For instance, there were reported increases in cases of serious lung diseases, including sarcoidosis and interstitial lung disease, among exposed populations a decade after 9/11." Id. at *6

\*    \*    \*

"Since 2011, medical experts have also seen cancer rates dramatically increase among those exposed to 9/11 contaminants, and these cancers constitute a third wave of adverse health effects among populations exposed to 9/11 toxins. [footnote 30 omitted]" Id. at *6-7.

"Recent studies have further bolstered the increasingly strong link between exposure to 9/11-related toxins and cancer, as evident by the sharp increase in cancer rates among 9/11 responders and survivors." Id. at *7.

As to the new evidence that was presented by Plaintiffs' counsel in its motion papers, such consisted of proof of how the VCF, in calculating awards on death claims, issues non-economic awards to not only the spouses and qualifying dependents of those killed on 9/11 but equally so to spouses and qualifying dependents of Latent Injury Decedents. ECF No. 9767 at *20-21; ECF No. 9777 at *21-23; ECF No. 9771 at *20-21; see 28 CFR § 104.44; September 11th Victim Compensation Fund Policies and Procedures, Section 2.1.a at https://www.vcf.gov/policy/calculation-loss. Section 2.1 defines "Non-Economic Loss" as:

"[L]osses for physical and *emotional pain*, suffering, inconvenience, physical impairment, *mental anguish*, disfigurement, loss of enjoyment of life, *loss of society and companionship*, loss of consortium (other than loss of domestic service) …and all other nonpecuniary losses of any nature." (italics added) Id.

12

The Special Master of VCF I (2001-2004), Kenneth Feinberg, in his Final Report, stated the following regarding awards of "Non-Economic Loss":

> "Faced with the unfathomable task of placing a dollar amount upon the pain, emotional suffering, loss of enjoyment of life, and mental anguish suffered by the thousands of victims of the September 11th attacks, the Special Master and the Department determined that the fairest and most rational approach was to establish a uniform figure for the pain and suffering of deceased victims *and their dependents*." (italics added)

<u>See</u> Final Report Of The Special Master For the September 11th Victim Compensation Fund of 2001, Vol. 1, 2004, p. 40 at https://permanent.access.gpo.gov/lps55611/v.1/final_report.pdf

The same process exists in VCF II, with "Non-Economic Losses" being awarded to both qualifying dependents of 9/11 Decedents *and* qualifying dependents of Latent Injury Decedents.

In the case at bar, the VCF has issued, on Deceased Claims, such "Non-Economic Loss" awards to spouses and other qualifying dependents of 9/11 Decedents. <u>See e.g.</u>, [ECF No. 9768 at Ex. F, VCF Award Detail, Deceased Claim, "Non-Economic Loss – Spouse/Dependent(s)"; ECF No. 9778 at Ex. M, VCF Award Detail, Deceased Claim, "Non-Economic Loss – Spouse/Dependent(s)"; and ECF No. 9773 at Ex. Y, VCF Award Detail, Deceased Claim, "Non-Economic Loss – Spouse/Dependent(s)"].

Any such "Non-Economic Loss" award is paid directly to the spouse and/or qualifying dependent(s) and thus does not pass through the estate. <u>See</u>, <u>September 11th Victim Compensation Fund of 2001, Compensation for Deceased Victims, Distribution Plain Information</u> at https://www.justice.gov/archive/victimcompensation/distribution_plan_example.html; ECF No. 9768 at Ex. W; ECF No. 9778 at Ex. SS; ECF No. 9773 at Ex. EE.

Thus, Plaintiffs' counsel respectfully submits that the non-economic losses awarded by the VCF to a decedent's qualifying dependent(s) includes, at least in part, an award of solatium damages.

In denying these solatium claims, the Magistrate Judge stated that the VCF Non-Economic

Loss awards to dependents of Latent Injury Decedents "does not solve the Surviving Family Members' causation problem under § 1605A", Feb. 28, 2025, ECF No. 10755 at *14, because, in awarding such losses to a decedent's dependent(s), the "[VCF] makes no assessment of causation linked to a tortfeasor's conduct." Id.

However, in setting forth the purpose of the VCF, the statue states: "*All* compensation provided through the VCF will be *on account of* personal physical conditions, physical injuries or death" (italics added) 28 C.F.R. § 104.2 (of an eligible claimant as defined in 28 C.F.R. § 104.2(b)). It is thus respectfully submitted that the VCF has, in effect, made the assessment that "Non-Economic Loss" compensation awarded to a qualifying dependent is on account of, i.e., resulting from, the death of a 9/11 Decedent *or* a Latent Injury Decedent.

Magistrate Judge Netburn previously found that the VCF "eligibility determination process incorporates robust procedural protections [citation omitted]", Latent Injury I R&R at *5, and that the "Court is confident in the quality of the conclusions the VCF reaches…" Id.

It is respectfully requested that the Court give equal consideration to the fact that, in awarding solatium-type damages directly to qualifying dependents of a latent injury decedent, the VCF has necessarily determined that such losses were a result of the 9/11 Terrorist Attacks.

Further, Plaintiffs' counsel respectfully submits that the Affidavits of Surviving Family Members clearly illustrate that they are not attenuated victims of Defendant's tortious conduct. Rather, they have all suffered emotionally as a direct result of the Terrorist Attack and the readily foreseeable deadly environmental assault that ensued and took the lives of their loved ones. See e.g., ECF No. 9768, Ex. L (Son of a WTC First Responder: "My father sacrificed his life to help others during 9/11 and his death truly did hurt my family and me"); ECF No. 9778, Ex. J (Daughter of a WTC First Responder: "to see him die as a result of service to the WTC disaster and his fellow

firefighters was extremely difficult to this day"); ECF No. 9773, Ex. Z (Daughter of a Lower Manhattan Resident: "I've been in therapy for over 12 years to help me with anxiety and depression that is almost certainly due to having lost her so suddenly and painfully, as well as the constant fear that I will be next. The fear that the same fumes and debris that killed her will also kill me.").[5]

_Finally_, while Magistrate Judge Netburn cited the opinion in _Kinsman Transit Co. v. City of Buffalo_, 388 F2d 821 [2d Cir 1968] as instructive, _Kinsman_ actually involved a materially different calculus.

The broad issue considered in _Kinsman_ was whether there was or should be a point at which the legal liability arising from the Defendant's conduct should extend no further irrespective of whether other, more remote injuries arose therefrom. Judge Kaufman observed that "[n]umerous principles have been suggested to determine the point at which a defendant should no longer be held legally responsible for damage cause 'in fact' by his negligence." _Kinsman_, 388 F2d at 824. In so concluding, the Court also acknowledged Professor Prosser's counterargument to the effect that "if the result is out of all proportion to the defendant's fault, it can be no less out of proportion to the plaintiff's entire innocence." Id. at 823.

Yet, there is a distinct difference between the issue considered in _Kinsman_ and the issue herein. This case does not involve the question of how far a defendant's liability should extend as to "damage cause[d] in fact by his negligence." Nor does it involve any demarcation of the point at which the injury should be borne by the innocent plaintiff rather than by the defendant whose negligence was a cause in fact of the injury.

This is because this is not a case in which the defendant is being sued for the alleged consequence of his, her or its negligent conduct. The Defendant is here being sued for a terrorist

---

[5] For reasons of confidentiality, these and other exhibits were placed under seal pursuant to an Order issued on Aug. 9, 2024, ECF No. 10225.

attack it directly and materially supported. The harm was no accident. The harm was intentional, not merely in the sense that the Defendant intentionally carried out the actions which resulted in the harm, but also in that Defendant intended the harm. The harm for which suit is brought was not a by-product of the Defendant's conduct; it was an *intended consequence* of the Defendant's conduct. It is what the Defendant *wanted* to occur.

The Surviving Family Members of the Latent Injury Decedents respectfully submit that that, too, should matter.

## X.    Conclusion

For all the reasons set forth above, Plaintiffs respectfully object to Magistrate Judge Netburn's Report & Recommendation, as amended, only insofar as it recommended denial of the claims of the Surviving Family Members of Latent Injury Decedents, and Plaintiffs respectfully request that the Court enter judgment in favor of all Plaintiffs.

March 24, 2025
New York, New York

Respectfully submitted,

_____
Nicholas Papain, Esq.
Sullivan Papain Block McManus
Coffinas & Cannavo P.C.
120 Broadway, 27th Floor
New York, NY 10271
Phone: (212) 732-9000
npapain@triallaw1.com
COUNSEL FOR PLAINTIFFS IN THE *ACCARDI, ALEXANDER,* AND *BETSO* ACTIONS